# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY
----------------------------------------------------------------------X

RICHARD GARCIA; MICHAEL KELLISON; WALTER
GOBLE; ALPHONSE SCHMIDT; MICHAEL HILTON;
PATRICIA DICKERSON; JENNIFER HAVARD;
COLLIN NESBITT; ROBERT BARRON; ROBERTA
CHARLES; THOMAS BRANNON; DONALD DAVILA;
LAMARCUS, OLIVER; BECKY GOLLEY; JAMES
ROOD; JOSEPH POLK; BRUCE RUSSELL; RICKY
MURPHY; REGGIE DUNN; VICTOR ATKINSON; ERIN
RIVERA; CHARLES PANNELL; RAMIRO GONZALES;
DOUGLAS WHITMAN; CLYDE ADAMS; JILL
ANGLIN; AGNIESZKA NIEWIAROWSKI; WILLIAM
KOSIK; VICTOR SHAW; DANIAL BOURA; DAVID
MCCORMICK; TERESA ARNETT; MARSHALL
RICHARDSON; CHARLES KADING; RAYMOND
WHITE; SCOTT SMITH; JERRY ALLISON; JOHN
SADOWSKI; CHARLES WALKER; LEE
BILLINGLSEY; KIMBERLY CROSS; BERNARD
ROBINSON; FRANCISCO JUAREZ; ANTHONY
SANDERS; ALFRED COLLINS; JOHN D. MOOMAW;
LARRY LASTER; BRIAN GILLILAND; WILLIAM
GIBSON; KEITH JOHNSON; CHRISTOPHER
COLBERT; JOSEPH HUYGE; ROBERT CHEVALIER;
RICKEY ONEAL; EDDIE WILLIAMS; MIKE RAZAVI;
KAREN LEE TAYLOR; RICHARD PARKER III;
MICHELLE BAILEY; KENNETH CUNNINGHAM;
LYNDON ALFRED; AGABITA ROWE; TIM MARTIN;
ROBERT PIAZZA; PEDRO CARATTINI; AGAPITO
ARREDONDO; ALIDA PUGH; JAMES HILLEY;
MICHAEL CHIEFFO; LARRY NELSON; TIMMY
STINE; MATTHEW STUBBLEFIELD; JOHN
CALHOUN; KATHY THORNTON; LLOYD BENTLEY;
AND JUSTIN HARRIS.

            *Plaintiffs,*


-against -

Index No. _____/2022

**SUMMONS**

Venue is designated pursuant to
CPLR § 503(a) & (c) in that
NEW YORK in this county.

THE 3M COMPANY, f/k/a Minnesota Mining and Manufacturing Co., AGC CHEMICALS AMERICAS INC., AMEREX CORPORATION, ARKEMA INC., ARCHROMA U.S. INC., BUCKEYE FIRE EQUIPMENT COMPANY, CARRIER GLOBAL CORPORATION, CHEMDESIGN PRODUCTS INC., CHEMGUARD INC. CHEMICALS, INC., CLARIANT CORPORATION, individually and as successor in interest to Sandoz Chemical Corporation, CORTEVA, INC., individually and as successor in interest to DuPont Chemical Solutions Enterprise, DEEPWATER CHEMICALS, INC., DUPONT DE NEMOURS INC., individually and as successor in interest to DuPont Chemical Solutions Enterprise, DYNAX CORPORATION, E. I. DUPONT DE NEMOURS AND COMPANY, individually and as successor in interest to DuPont Chemical Solutions Enterprise, KIDDE-FENWAL, INC., individually and as successor in interest to Kidde Fire Fighting, Inc., NATION FORD CHEMICAL COMPANY, THE CHEMOURS COMPANY, individually and as successor in interest to DuPont Chemical Solutions Enterprise, THE CHEMOURS COMPANY FC, LLC, individually and as successor in interest to DuPont Chemical Solutions Enterprise, and TYCO FIRE PRODUCTS, LP, individually and as successor in interest to The Ansul Company, and DOE DEFENDANTS 1-20, fictitious names whose present identities are unknown,

        *Defendants.*

-----------------------------------------------------------------------X

To the above-named Defendant:

     You are hereby summoned to answer the Complaint in this action, and to serve a copy of your Answer, or, if the Complaint is not served with this Summons, to serve a Notice of Appearance on the Plaintiffs' attorneys within twenty (20) days after the service of this Summons, exclusive of the day of service, where service is made by delivery upon you personally within the state, or, within thirty (30) days after completion of service where service is made in any other manner. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

2

Dated: New York, New York
     August 30, 2022

                Napoli Shkolnik, PLLC
                *Attorneys for Plaintiff*

                */s/ Patrick J. Lanciotti*
                Patrick J. Lanciotti, Esq.
                360 Lexington Avenue, 11th Floor
                New York, New York   10017
                212-397-1000
                PLanciotti@napolilaw.com

To:

3M COMPANY
c/o Corporation Service Company
251 Little Falls Drive
Wilmington, New Castle, DE 19808
AGC CHEMICALS AMERICAS INC.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

AMEREX CORPORATION
c/o James M. Proctor II
2900 Highway 280
Suite 300
Birmingham, AL 35223
ARCHROMA U.S. INC.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

ARKEMA INC.
900 First Avenue
King of Prussia, PA 19406

BUCKEYE FIRE EQUIPMENT COMPANY
c/o A Haon Corporate Agent, Inc.
29225 Chagrin Blvd, Suite 350
Pepper Pike, OH 44122

CARRIER GLOBAL CORPORATION
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

CHEMDESIGN PRODUCTS INC.
c/o Corporation Service Company
251 Little Falls Drive
Wilmington, New Castle, DE, 19808

CHEMGUARD INC.
c/o The Prentice-Hall Corporation System, Inc.
251 Little Falls Drive
Wilmington, New Castle, DE, 19808

CHEMICALS, INC.
c/o Ashok K. Moza
12321 Hatcherville
Baytown, TX 77520

CLARIANT CORPORATION
c/o Corporation Service Company
8040 Excelsior Drive, Suite 400
Madison, WI 53717

CORTEVA, INC.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

DEEPWATER CHEMICALS, INC.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

4

DUPONT DE NEMOURS INC.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

DYNAX CORPORATION
c/o Corporate Systems LLC
3500 S. Dupont Highway
Dover, DE 19901

E. I. DUPONT DE NEMOURS AND COMPANY
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

KIDDE-FENWAL, INC.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

NATION FORD CHEMICAL COMPANY
c/o John A. Dickson, IV
2300 Bank Street
Fort Mill, SC 29715

THE CHEMOURS COMPANY
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

THE CHEMOURS COMPANY FC, LLC
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

5

2:22-cv-00538-RMG   Date Filed 01/11/23   Entry Number 1-1   Page 7 of 82

TYCO FIRE PRODUCTS LP
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

6

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY

---

RICHARD GARCIA; MICHAEL KELLISON; WALTER
GOBLE; ALPHONSE SCHMIDT; MICHAEL HILTON;
PATRICIA DICKERSON; JENNIFER HAVARD; COLLIN
NESBITT; ROBERT BARRON; ROBERTA CHARLES;
THOMAS BRANNON; DONALD DAVILA; LAMARCUS,
OLIVER; BECKY GOLLEY; JAMES ROOD; JOSEPH
POLK; BRUCE RUSSELL; RICKY MURPHY; REGGIE
DUNN; VICTOR ATKINSON; ERIN RIVERA; CHARLES
PANNELL; RAMIRO GONZALES; DOUGLAS
WHITMAN; CLYDE ADAMS; JILL ANGLIN;
AGNIESZKA NIEWIAROWSKI; WILLIAM KOSIK;
VICTOR SHAW; DANIAL BOURA; DAVID
MCCORMICK; TERESA ARNETT; MARSHALL
RICHARDSON; CHARLES KADING; RAYMOND
WHITE; SCOTT SMITH; JERRY ALLISON; JOHN
SADOWSKI; CHARLES WALKER; LEE BILLINGLSEY;
KIMBERLY CROSS; BERNARD ROBINSON;
FRANCISCO JUAREZ; ANTHONY SANDERS; ALFRED
COLLINS; JOHN D. MOOMAW; LARRY LASTER;
BRIAN GILLILAND; WILLIAM GIBSON; KEITH
JOHNSON; CHRISTOPHER COLBERT; JOSEPH
HUYGE; ROBERT CHEVALIER; RICKEY ONEAL;
EDDIE WILLIAMS; MIKE RAZAVI; KAREN LEE
TAYLOR; RICHARD PARKER III; MICHELLE BAILEY;
KENNETH CUNNINGHAM; LYNDON ALFRED;
AGABITA ROWE; TIM MARTIN; ROBERT PIAZZA;
PEDRO CARATTINI; AGAPITO ARREDONDO; ALIDA
PUGH; JAMES HILLEY; MICHAEL CHIEFFO; LARRY
NELSON; TIMMY STINE; MATTHEW STUBBLEFIELD;
JOHN CALHOUN; KATHY THORNTON; LLOYD
BENTLEY; AND JUSTIN HARRIS.

    *Plaintiffs,*

-*vs* -

THE 3M COMPANY, f/k/a Minnesota Mining and
Manufacturing Co., AGC CHEMICALS AMERICAS INC.,
AMEREX CORPORATION, ARKEMA INC.,

Index No. _____/2022

**COMPLAINT AND DEMAND
FOR JURY TRIAL**

Trial by jury is desired in the
County of New York

Venue is designated pursuant to
CPLR § 503(a) & (c) in that the
causes of action occurred in this
county.

ARCHROMA U.S. INC., BUCKEYE FIRE EQUIPMENT COMPANY, CARRIER GLOBAL CORPORATION, CHEMDESIGN PRODUCTS INC., CHEMGUARD INC. CHEMICALS, INC., CLARIANT CORPORATION, individually and as successor in interest to Sandoz Chemical Corporation, CORTEVA, INC., individually and as successor in interest to DuPont Chemical Solutions Enterprise, DEEPWATER CHEMICALS, INC., DUPONT DE NEMOURS INC., individually and as successor in interest to DuPont Chemical Solutions Enterprise, DYNAX CORPORATION, E. I. DUPONT DE NEMOURS AND COMPANY, individually and as successor in interest to DuPont Chemical Solutions Enterprise, KIDDE-FENWAL, INC., individually and as successor in interest to Kidde Fire Fighting, Inc., NATION FORD CHEMICAL COMPANY, THE CHEMOURS COMPANY, individually and as successor in interest to DuPont Chemical Solutions Enterprise, THE CHEMOURS COMPANY FC, LLC, individually and as successor in interest to DuPont Chemical Solutions Enterprise, and TYCO FIRE PRODUCTS, LP, individually and as successor in interest to The Ansul Company, and DOE DEFENDANTS 1-20, fictitious names whose present identities are unknown,

        *Defendants.*

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

RICHARD GARCIA; MICHAEL KELLISON; WALTER GOBLE; ALPHONSE SCHMIDT; MICHAEL HILTON; PATRICIA DICKERSON; JENNIFER HAVARD; COLLIN NESBITT; ROBERT BARRON; ROBERTA CHARLES; THOMAS BRANNON; DONALD DAVILA; LAMARCUS, OLIVER; BECKY GOLLEY; JAMES ROOD; JOSEPH POLK; BRUCE RUSSELL; RICKY MURPHY; REGGIE DUNN; VICTOR ATKINSON; ERIN RIVERA; CHARLES PANNELL; RAMIRO GONZALES; DOUGLAS WHITMAN; CLYDE ADAMS; JILL ANGLIN; AGNIESZKA NIEWIAROWSKI; WILLIAM KOSIK; VICTOR SHAW; DANIAL BOURA; DAVID MCCORMICK; TERESA ARNETT; MARSHALL

2

RICHARDSON; CHARLES KADING; RAYMOND WHITE; SCOTT SMITH; JERRY ALLISON; JOHN SADOWSKI; CHARLES WALKER; LEE BILLINGLSEY; KIMBERLY CROSS; BERNARD ROBINSON; FRANCISCO JUAREZ; ANTHONY SANDERS; ALFRED COLLINS; JOHN D. MOOMAW; LARRY LASTER; BRIAN GILLILAND; WILLIAM GIBSON; KEITH JOHNSON; CHRISTOPHER COLBERT; JOSEPH HUYGE; ROBERT CHEVALIER; RICKEY ONEAL; EDDIE WILLIAMS; MIKE RAZAVI; KAREN LEE TAYLOR; RICHARD PARKER III; MICHELLE BAILEY; KENNETH CUNNINGHAM; LYNDON ALFRED; AGABITA ROWE; TIM MARTIN; ROBERT PIAZZA; PEDRO CARATTINI; AGAPITO ARREDONDO; ALIDA PUGH; JAMES HILLEY; MICHAEL CHIEFFO; LARRY NELSON; TIMMY STINE; MATTHEW STUBBLEFIELD; JOHN CALHOUN; KATHY THORNTON; LLOYD BENTLEY; AND JUSTIN HARRIS, ("Plaintiffs"), by and through the undersigned counsel, hereby files this Complaint against Defendants, 3M COMPANY, f/k/a Minnesota Mining and Manufacturing Co., AGC CHEMICALS AMERICAS INC., AMEREX CORPORATION, ARKEMA INC., ARCHROMA U.S INC., BUCKEYE FIRE EQUIPMENT COMPANY, CARRIER GLOBAL CORPORATION, CHEMDESIGN PRODUCTS INC., CHEMGUARD INC., CHEMICALS, INC., CLARIANT CORPORATION, CORTEVA, INC., DEEPWATER CHEMICALS, INC., DUPONT DE NEMOURS INC., DYNAX CORPORATION, E. I. DUPONT DE NEMOURS AND COMPANY, KIDDE-FENWAL, INC., NATION FORD CHEMICAL COMPANY, THE CHEMOURS COMPANY, THE CHEMOURS COMPANY FC, LLC, and TYCO FIRE PRODUCTS, LP, and DOE DEFENDANTS 1-20, fictitious names whose present identifies are unknown (collectively "Defendants") and alleges, upon information and belief, as follows:

## INTRODUCTION

1.      This action arises from the foreseeable contamination of groundwater by the use of aqueous film-forming foam ("AFFF") products that contained per- and poly-fluoroalkyl substances ("PFAS"), including perfluoro octane sulfonate ("PFOS") and perfluorooctanoic acid ("PFOA").

2.      PFOS and PFOA are fluorosurfactants that repel oil, grease, and water. PFOS, PFOA, and/or their chemical precursors, are or were components of AFFF products, which are firefighting suppressant agents used in training and firefighting activities for fighting Class B fires. Class B fires include fires involving hydrocarbon fuels such as petroleum or other flammable liquids.

3.      PFOS and PFOA are mobile, persist indefinitely in the environment, bioaccumulate in individual organisms and humans, and biomagnify up the food chain. PFOS and PFOA are also associated with multiple and significant adverse health effects in humans, including but not limited to kidney cancer, testicular cancer, high cholesterol, thyroid disease, ulcerative colitis, and pregnancy-induced hypertension.

4.      At various times from the 1960s through today, Defendants designed, manufactured, marketed, distributed, and/or sold AFFF products containing PFOS, PFOA, and/or their chemical precursors, and/or designed, manufactured, marketed, distributed, and/or sold the fluorosurfactants and/or perfluorinated chemicals ("PFCs") contained in AFFF (collectively, "AFFF/Component Products").

5.      Defendants designed, manufactured, marketed, distributed, and/or sold AFFF/Component Products with the knowledge that these toxic compounds would be released into the environment during fire protection, training, and response activities, even when used as directed and intended by Defendants.

4

6.      Since its creation in the 1960s, AFFF designed, manufactured, marketed, distributed, and/or sold by Defendants, and/or that contained fluorosurfactants and/or PFCs designed, manufactured, marketed, distributed, and/or sold by Defendants, used as directed and intended by Defendants, and subsequently released into the environment during fire protection, training, and response activities, resulting in widespread PFAS contamination.

7.      Due to this contamination, Plaintiffs have suffered real personal injuries, bioaccumulation of PFAS in their bodies, property damage and the diminution in value of their properties as a result of the release of PFAS to their water supplies.

8.      Plaintiffs have suffered an assortment of diseases and medical conditions as a direct result of their exposure to the PFAS contamination of their water supply.

9.      Plaintiffs, as residents and those who visited, worked, or otherwise dwelled in the Site area, have been unknowingly exposed for many years to PFAS, including at concentrations hazardous to their health.

10.     Plaintiffs' unwitting exposure to PFAS in their water supply as a result of the Defendants' conduct, is the direct and proximate cause of Plaintiffs' injuries.

11.     Plaintiffs' property has been damaged as a result of the presence of the PFAS in their water supply.

12.     Plaintiffs seek recovery from Defendants for injuries, damages, and losses suffered by the Plaintiffs as a result of exposure to the introduction of PFAS and other toxic substance into their water supply, and then into their properties and bodies, in an amount to be determined at trial, exclusive of interest, costs, and attorneys' fees.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction because Defendant Dynax Corporation's principal place of business is located at 103 Fairview Park Drive, Elmsford, New York 10523.

5

14.     Venue is proper in this District under CPLR §503 (a) because the events, omissions and harms that are the basis of Plaintiffs claims occurred in substantial party in this District.

15.     This Court has personal jurisdiction over Defendants by virtue of each Defendants' regular and systematic contacts with New York, including, among other things, purposefully marketing, selling and/or distributing their AFFF/Component Products to and within New York, and because they have the requisite minimum contacts with New York necessary to constitutionally permit the Court to exercise jurisdiction over them consistent with traditional notions of fair play and substantial justice.

## PARTIES

### A.     Plaintiffs

16.     Plaintiff Richard Garcia resides at 1628 Cresson Trail, Leeander, TX 78641. Plaintiff was formerly stationed at Philippines, Japan, MCAS San Diego, CT, Charleston SC, Orland FL (hereinafter the "Site") from 1973 to 1993 was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Richard Garcia's exposure, Plaintiff has been diagnosed with Prostate Cancer, Ulcerative Colitis.

17.     Plaintiff Michael Kellison resides at 173 W Evans St., Norfolk, VA 23503. Plaintiff was formerly stationed at Norfolk NS, Navy Berlin, NAS Oceana (hereinafter the "Site") from 2006 to 2019 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct

6

and proximate result of Plaintiff Michael Kellison's exposure, Plaintiff has been diagnosed with Kidney Cancer, Renal Cell Carcinoma.

18.     Plaintiff Walter Goble resides at 211 Mulberry Ave., Pomeroy, OH 45769. Plaintiff was formerly stationed at Jacksonville NB, NAS Lakehurst, NAS Jacksonville (hereinafter the "Site") from 1971 to 1992 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Walter Goble's exposure, Plaintiff has been diagnosed with Cancer, Granulomatosis, Thyroid Disease.

19.     Plaintiff Alphonse Schmidt resides at 10740 West Granada Rd., Avondale, AZ 85392. Plaintiff was formerly stationed at Lackland AFB, Randolph AFB, Galena AK, SAMSO CA, Travifs AFB, Hollman AFB, Tuy Hoa, Seymour Johnson AFB, Peterson Field AFB, Upper Heyford U.K., Carswell AFB, Bentwaters U.K. (hereinafter the "Site") from 1966 to 1990 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Alphonse Schmidt's exposure, Plaintiff has been diagnosed with High Blood Pressure, Ulcerative Colitis.

20.     Plaintiff Michael Hilton resides at 470 Revenna Trail, Fayetteville, GA 30214. Plaintiff was formerly stationed at Jacksonville NB, Boot Camp Orland FL (hereinafter the "Site") from 1982 to 1985 and was living on base at the Site during that time. While living on base at the

7

Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Michael Hilton's exposure, Plaintiff has been diagnosed with Crohn's Disease, Hyperthyroidism, Thyroid Disease.

21.     Plaintiff Patricia Dickerson resides at 1316 Limit St., Leavenworth, KS 66048. Plaintiff was formerly stationed at Lackland AFB, Keesler AFB, Griffis AFB, Columbus AFB, McConnell AB, Peterson AFB (hereinafter the "Site") from 1981 to 2001 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Patricia Dickerson's exposure, Plaintiff has been diagnosed with Diabetes, High Blood Pressure, Hypothyroidism, Sleep Apnea, Thyroid Disease, Tumor.

22.     Plaintiff Jennifer Havard resides at 1316 Limit St., Leavenworth, KS 66048. Plaintiff was formerly stationed at Plattsburgh AFB (hereinafter the "Site") during 1974 to 1980 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Jennifer Havard's exposure, Plaintiff was diagnosed with High Blood Pressure, High Cholesterol, Pregnancy Problems, Thyroid Disease.

8

23.     Plaintiff Collin Nesbitt resides at 1131 Vista View Dr., Burleson, TX 76028. Plaintiff was formerly stationed at FT. Wainwright (hereinafter the "Site") from 2008 to 2011 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Collin Nesbitt's exposure, Plaintiff was diagnosed with High Blood Pressure, Testicular Cancer.

24.     Plaintiff Robert Barron resides at 1281 Credle Rd., Virginia Beach, VA 23454. Plaintiff was formerly stationed at Boot Camp San Diego, Great Lakes IL, Port Hueneme, Sheppard AFB, USS Proteus AS19, USS Tulare LKA 112, 31st NCB, USS White Plains AFS 4, Yokosuka NB, SIMA San Diego, NAS Sigonella, Naval ROTC Georgia, USS Simon Lake AS33 (hereinafter the "Site") from 1972 to 1992 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Robert Barron's exposure, Plaintiff has been diagnosed with Bladder Cancer, Cancer.

25.     Plaintiff Roberta Charles resides at 4713 Guillot Rd., New Iberia, LA 70560. Plaintiff was formerly stationed at FT. Hood, Hanau Germany, FT. Polk (hereinafter the "Site") from 1989 to 1996 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result

9

of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Roberta Charles's exposure, Plaintiff is diagnosed with High Blood Pressure, High Cholesterol, Pregnancy Problems, Ulcerative Colitis.

26.     Plaintiff Thomas Brannon resides at 515 Wendover Wy., Grovetown, GA 30813. Plaintiff was formerly stationed at FT. Sam Houston, FT. Gordon (hereinafter the "Site") from 1998 to 2006 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Thomas Brannon's exposure, Plaintiff is diagnosed with Asthma, Cardiac Problems, High Blood Pressure, Hypothyroidism, Myeloma, Skin Cancer, Sleep Apnea.

27.     Plaintiff Donald Davila resides at PO Box 181492, Corpus Christi, TX 78480. Plaintiff was formerly stationed at Pearl Harbor (hereinafter the "Site") from 1972 to 1975 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Donald Davila's exposure, Plaintiff is diagnosed with COPD, Ulcerative Colitis.

28.     Plaintiff LaMarcus Oliver resides at 199 Charlotte Ave., Suffolk, VA 23434. Plaintiff was formerly stationed at NAS Norfolk, FT. Eustis (hereinafter the "Site") from 1994 to 2001 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated

10

levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff LaMarcus Oliver's exposure, Plaintiff has been diagnosed with High Blood Pressure, High Cholesterol, Pain, Ulcerative Colitis.

29.    Plaintiff Becky Golley resided at 815 Karen St., Fort Morgan, CO 60701. Plaintiff was formerly stationed at NAS Oceana, Rota Spain, Japan, NAS Norfolk (hereinafter the "Site") from 1981 to 1997 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Becky Golley's exposure, Plaintiff has been diagnosed with Brain Cancer, Thyroid Disease.

30.    Plaintiff James Rood resides at 41171 Lacomb, Lebanon, OR 97355. Plaintiff was formerly stationed at FT. Lewis, FT. Carson (hereinafter the "Site") from 2005 to 2015 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff James Rood's exposure, Plaintiff has been diagnosed with High Blood Pressure, High Cholesterol, Kidney Cancer, Liver Problems, Lymphoma, Testicular Cancer.

31.    Plaintiff Joseph Polk resides at 1605 East 12th St., Des Moines, OH 50316. Plaintiff was formerly stationed at Camp Pendleton, Camp Lejeune (hereinafter the "Site") and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to

11

PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Joseph Polk's exposure, Plaintiff has been diagnosed with High Blood Pressure, High Cholesterol, Ulcerative Colitis.

32.     Plaintiff Bruce Russell resides at 2551W 92Nd Ave., Federal Heights, CO 80260. Plaintiff was formerly stationed at AFB Hickam, USS Graft, NS North Island, Virginia Beach, Point Luma, San Diego NS (hereinafter the "Site") from 1975 to 1991 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Bruce Russell's exposure, Plaintiff has been diagnosed with Hashimoto's Disease, High Cholesterol, Hyperthyroidism, Hypothyroidism.

33.     Plaintiff Ricky Murphy resides at 718 Shore Dr., Lithonia, GA 30058. Plaintiff was formerly stationed at Camp Lejeune (hereinafter the "Site") and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Ricky Murphy's exposure, Plaintiff has been diagnosed with High Blood Pressure, Pain, Skin Rashes, Itches, Fungus, Lesions, Thyroid Disease.

12

34.     Plaintiff Reggie Dunn resides at 2551 Pleasant View Dr. C3, Marion, IA 52302. Plaintiff was formerly stationed at McConnel AFB, Williams AFB (hereinafter the "Site") from 1970 to 1976 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Reggie Dunn's exposure, Plaintiff has been diagnosed with Graves' Disease, High Blood Pressure, Hypothyroidism, Pancreatic Cancer.

35.     Plaintiff Victor Atkinson resides at 1220 Avondale Cir., Nashville, TN 37207. Plaintiff was formerly stationed at FT. McClellan, FT. Ord, Coleman Barrack, FT. Murray, FT. Knox, FT. Bragg, FT. A-P Hill, FT. Belvoir, FT. Myers (hereinafter the "Site") from 1979 to 1998 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Victor Atkinson's exposure, Plaintiff has been diagnosed with High Blood Pressure, High Cholesterol, Kidney Disease, Liver Problems, Prior Existing Condition - Exacerbation, Thyroid Disease.

36.     Plaintiff Erin Rivera resides at 1430 Cambridge Pl. Apt. 23, Manhattan, KS 66502. Plaintiff was formerly stationed at FT. Riley (hereinafter the "Site") from 2006 to 2010 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the

13

Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Erin Rivera's exposure, Plaintiff has been diagnosed with Graves' Disease, Hyperthyroidism, Thyroid Disease.

37.   Plaintiff Charles Pannell resides at 53 Chalfont Ln., Manchester Township, NJ 08759. Plaintiff was formerly stationed at FT. Bragg, FT. Benning, FT. Gordon, FT. Dix (hereinafter the "Site") from 1970 to 1972 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Charles Pannell's exposure, Plaintiff has been diagnosed with Testicular Cancer.

38.   Plaintiff Ramiro Gonzales resides at 1222 Falcon St. Apt. 17, Houston, TX 77015. Plaintiff was formerly stationed at Camp Lejeune, Camp Pendleton (hereinafter the "Site") from 1975 to 1976 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Ramiro Gonzales's exposure, Plaintiff has been diagnosed with High Blood Pressure, High Cholesterol, Thyroid Disease, Ulcerative Colitis.

39.   Plaintiff Douglas Whitman resides at 3027 Crescent Dr. Apt. 1, International Falls, IN 56649. Plaintiff was formerly stationed at JB Lewis-McChord (hereinafter the "Site") from 1980 to 1984 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing

14

elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Douglas Whitman's exposure, Plaintiff has been diagnosed with Ulcerative Colitis.

40.     Plaintiff Clyde Adams resides at 2457 East Knapp Dr., Post Falls, ID 83854. Plaintiff was formerly stationed at Altus AFB, Edwards AFB, Beale AFB, FT. Jackson, FT. Gordon, Savanah GA (hereinafter the "Site") from 1960 to 1981 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Clyde Adams's exposure, Plaintiff has been diagnosed with High Blood Pressure, High Cholesterol, Thyroid Disease.

41.     Plaintiff Jill Anglin resides at 26 Pardoners Tale Ln., Felton, DE 19943. Plaintiff was formerly stationed at NB Philadelphia (hereinafter the "Site") from 1970 to 1989 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Jill Anglin's exposure, Plaintiff has been diagnosed with Diabetes, Thyroid Disease.

42.     Plaintiff Agnieszka Niewiarowski resides at 1023 S Wellington, Waukegan, IL 60085. Plaintiff was formerly stationed at NB New Orleans, Great Lakes IL, Balboa Hospital San Diego CA, Camp Pendleton (hereinafter the "Site") from 1991 to 2001 and was living on base at

the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Agnieszka Niewiarowski's exposure, Plaintiff has been diagnosed with Hyperthyroidism, Pain, PTSD, Reproductive Disorder, Thyroid Disease.

43. Plaintiff William Kosik resides at 215 Bessie Ann Hill Rd., Farmington, WV 26571. Plaintiff was formerly stationed at Great Lakes NB, USS Inflict (hereinafter the "Site") from 1982 to 1985 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff William Kosik's exposure, Plaintiff has been diagnosed with Diabetes, Testicular Cancer.

44. Plaintiff Victor Shaw resides at 650 University Blvd., Mobile, AL 36605. Plaintiff was formerly stationed at FT. Bragg (hereinafter the "Site") from 1975 to 1977 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Victor Shaw's exposure, Plaintiff has been diagnosed with Non-Hodgkin's Lymphoma, Thyroid Disease.

16

45.    Plaintiff Danial Boura resides at 2451 Raymond Tanner Rd. Lot 2, Semmes, AL 36575. Plaintiff was formerly stationed at FT. Dixon, FT. Riley, FT. Lewis, FT. Dixon, Germany (hereinafter the "Site") from 1971 to 1986 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Danial Boura's exposure, Plaintiff has been diagnosed with COPD, Depression, High Cholesterol, Hyperthyroidism, Hypothyroidism, PTSD.

46.    Plaintiff David D. McCormick resides at 26952 Moody Rd., Opp, AL 36467. Plaintiff was formerly stationed at FT. Polk (hereinafter the "Site") from 1970 to 1978 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff David D. McCormick's exposure, Plaintiff has been diagnosed with High Blood Pressure, High Cholesterol, Thyroid Disease.

47.    Plaintiff Teresa Arnett resides at 14580 FM 713, Rosanky, TX 78953. Plaintiff was formerly stationed at Barksdale AFB, Williams AFB, Nellis AFB, Goodfellow AFB (hereinafter the "Site") from 1977 to 1997 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health.

17

As a direct and proximate result of Plaintiff Teresa Arnett's exposure, Plaintiff has been diagnosed with High Blood Pressure, Hypothyroidism, Thyroid Disease.

48.     Plaintiff Marshall Richardson resides at P.O Box 2526, Tempe, AZ 85280. Plaintiff was formerly stationed at Luke AFB (hereinafter the "Site") from 1993 to 1994 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Marshall Richardson's exposure, Plaintiff has been diagnosed with Ulcerative Colitis.

49.     Plaintiff Charles Kading resides at 14222 Wunderlich Dr. Apt. 1208, Houston, TX 77069. Plaintiff was formerly stationed at Alameda CA, Meridian NAS, San Diego CA (hereinafter the "Site") from 1983 to 1992 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Charles Kading's exposure, Plaintiff has been diagnosed with Cardiac Problems, Diabetes, Ulcerative Colitis.

50.     Plaintiff Raymond White resides at 75 Central St. #2, Ansonia, CT 06401. Plaintiff was formerly stationed at FT. Knox, FT. Dix, Aberdeen Proving Ground, FT. Drum, FT. Knox (hereinafter the "Site") from 1980 to 1984 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations

18

hazardous to their health. As a direct and proximate result of Plaintiff Raymond White's exposure, Plaintiff has been diagnosed with Kidney Cancer.

51.     Plaintiff Scott Smith resides at 10526 Coyote Run, San Antonio, TX 78254. Plaintiff was formerly stationed at Florida NS, Millington NATTC, Cecil Field NAS, Lemoore NAS, Miramar NAS, Pensacola NAS (hereinafter the "Site") from 1986 to 2001 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Scott Smith's exposure, Plaintiff has been diagnosed with Ulcerative Colitis.

52.     Plaintiff Jerry Allison resides at 130 Echo Ave., Richmond, VA 23223. Plaintiff was formerly stationed at FT. Bragg, Peterson AFB (hereinafter the "Site") from 1989 to 1996 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Jerry Allison's exposure, Plaintiff has been diagnosed with Ulcerative Colitis.

53.     Plaintiff John Sadowski resides at 1051 Pinyon Cir., Pigeon Fordge, TN 37863. Plaintiff was formerly stationed at NTC Great Lakes, NS Portsmouth, NTC Orlando, Norfolk – Ship, Maryland Shipyard (hereinafter the "Site") from 1976 to 1980 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has

19

been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff John Sadowski's exposure, Plaintiff has been diagnosed with High Blood Pressure, High Cholesterol, Prostate Cancer, Ulcerative Colitis.

54.     Plaintiff Charles Walker resides at 2411 Ridglea Ct., Kileen, TX 76543. Plaintiff was formerly stationed at USS Los Alamos, USS Orion, USS Resolute, USS Caron (hereinafter the "Site") from 1986 to 1996 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Charles Walker's exposure, Plaintiff has been diagnosed with High Cholesterol, Hypothyroidism, Thyroid Disease.

55.     Plaintiff Lee Billingsley resides at 171 Circlewood Dr., Brent, AL 35034. Plaintiff was formerly stationed at FT. Benning (hereinafter the "Site") from 2002 to 2002 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Lee Billingsley's exposure, Plaintiff has been diagnosed with Thyroid Disease.

56.     Plaintiff Kimberly Cross resides at 3204 Tranquility Dr., Arlington, TX 76016. Plaintiff was formerly stationed at Charleston AFB, Tyndall AFB, Hickam AFB, George AFB, Luke AFB, Kadena AB, Tyndall AFB, Keflavik AB, RAY Lakenheath (hereinafter the "Site") from 1954 to 1999 and was living on base at the Site during that time. While living on base at the

20

Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Kimberly Cross's exposure, Plaintiff has been diagnosed with Bladder Cancer, Breast Cancer, High Cholesterol, Hypothyroidism, Thyroid Disease.

57.    Plaintiff Bernard Robinson resides at 3421 W Polk St., Chicago, IL 60624. Plaintiff was formerly stationed at Wright-Patterson AFB, Philadelphia PA, Great Lakes IL, Pearl Harbor, Oakland CA, Camp Lejeune (hereinafter the "Site") from 1979 to 1984 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Bernard Robinson's exposure, Plaintiff has been diagnosed with Prostate Cancer.

58.    Plaintiff Francisco Juarez resides at 11434 Rachito St., El Monte, CA 91736. Plaintiff was formerly stationed at Camp Lejeune (hereinafter the "Site") during 1973 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Francisco Juarez's exposure, Plaintiff has been diagnosed with High Blood Pressure, High Cholesterol, Thyroid Disease.

59.    Plaintiff Anthony Sanders resides at 28 State St. #5, Norfolk, VA 23503. Plaintiff was formerly stationed at NAS Oceana, Great Lakes NB, NATTC Millington, NAS Fallon, NAS

El Centro, NAS Key West, MTC Uma (hereinafter the "Site") from 1988 to 2008 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Anthony Sanders's exposure, Plaintiff has been diagnosed with High Cholesterol, Kidney Cancer.

60.     Plaintiff Alfred Collins resides at 204 Ashley Dr., McDonough, GA 30252. Plaintiff was formerly stationed at FT. Bragg, FT. McPherson, FT. Lee, FT. Stewart, FT. Benjamin Harrisson, Stuttgart AB (hereinafter the "Site") from 1979 to 1999 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Alfred Collins's exposure, Plaintiff has been diagnosed with Kidney Cancer.

61.     Plaintiff John D. Moomaw resides at 630 Howell Hill Rd., Flintville, TN 37335. Plaintiff was formerly stationed at FT. Knox, FT. Eustis, FT. Rucker, FT. Hood (hereinafter the "Site") from 1972 to 1983 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff John D. Moomaw's exposure, Plaintiff has been diagnosed with Cardiac Problems, Kidney Cancer, Kidney Disease.

22

62.     Plaintiff Larry Laster resides at 504 N Davis Ave., Lakeland, FL 33815. Plaintiff was formerly stationed at Jacksonville NB, NB Tampa, NB Roosevelt (hereinafter the "Site") from 1981 to 2015 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Larry Laster's exposure, Plaintiff has been diagnosed with Kidney Cancer.

63.     Plaintiff Brian Gilliland resides at 5725 Akula Bay St., N. Las Vegas, NV 89081. Plaintiff was formerly stationed at RTC Great Lakes, Beaufort Naval Hospital, NAS Pensacola (hereinafter the "Site") from 1990 to 1991 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Brian Gilliland's exposure, Plaintiff has been diagnosed with Hypothyroidism.

64.     Plaintiff William Gibson resides at 6036 Rollingwood St., Suffolk, VA 23435. Plaintiff was formerly stationed at Norfolk NS, NAS Jacksonville, NAS NW Annex, Amchitka AFB (hereinafter the "Site") from 1980 to 1993 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations

23

hazardous to their health. As a direct and proximate result of Plaintiff William Gibson's exposure, Plaintiff has been diagnosed with Lymphoma, Pancreatic Cancer.

65.    Plaintiff Keith Johnson resides at 6943 Elm Ave., Twentynine Palms, CA 92277. Plaintiff was formerly stationed at NAS Millington, New River AS, Marine Corps. Base HI, MCS Cherry Point (hereinafter the "Site") from 1981 to 2007 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Keith Johnson's exposure, Plaintiff has been diagnosed with Colon Cancer, Liver Cancer.

66.    Plaintiff Christopher Colbert resides at 2412 Hunts Neck Trail, Virginia Beach, VA 23456. Plaintiff was formerly stationed at FT. Walton Beach, Lajes AB, Andrews AFB (hereinafter the "Site") from 1989 to 1999 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Christopher Colbert's exposure, Plaintiff has been diagnosed with Cardiac Problems, High Blood Pressure, High Cholesterol, Hypothyroidism, Thyroid Cancer.

67.    Plaintiff Joseph Huyge resides at 8864 Carriage Hill Dr., Shelby Twp, MI 48317. Plaintiff was formerly stationed at NAS Cecil Field, NAS Oceana, NAWS China Lake Kern (hereinafter the "Site") from 1998 to 2004 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and

24

regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Joseph Huyge's exposure, Plaintiff has been diagnosed with Testicular Cancer.

68.     Plaintiff Robert Chevalier resides at 11235 N 34th Ave., Phoenix, AR 85029. Plaintiff was formerly stationed at NAS Alameda (hereinafter the "Site") from 1988 to 1994 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Robert Chevalier's exposure, Plaintiff has been diagnosed with Colon Cancer, Kidney Cancer.

69.     Plaintiff Rickey ONeal resides at 921 North Neoridian, Brazil, IN 47834. Plaintiff was formerly stationed at Lackland AFB, Randolph AFB, Lowery AFB, Dyess AFB (hereinafter the "Site") from 1974 to 1977 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Rickey ONeal's exposure, Plaintiff has been diagnosed with Arthritis, Heart Attack, High Blood Pressure, High Cholesterol, Liver Problems, Pancreatic Cancer, Stroke.

70.     Plaintiff Eddie Williams resides at 1715 Garrett House Ln., Fairfield, OH 45014. Plaintiff was formerly stationed at Aberdeen Proving Ground, Langley AFB (hereinafter the

25

"Site") from 1984 to 2000 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Eddie Williams's exposure, Plaintiff has been diagnosed with Anxiety, Brain Cancer, COPD, Emphysema, Liver Cancer, Lung Cancer, PTSD.

71.     Plaintiff Mike Razavi resides at P.O. Box 542, Wilton, CA 95693. Plaintiff was formerly stationed at FT. Campbell, Chanute AFB (hereinafter the "Site") from 1982 to 1985 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Mike Razavi's exposure, Plaintiff has been diagnosed with Diabetes, High Blood Pressure, High Cholesterol, Hyperthyroidism, Thyroid Disease.

72.     Plaintiff Karen Lee Taylor resides at 111B McCollum Cir., Mansfield Depot, CT 06251. Plaintiff was formerly stationed at Cannon AFB (hereinafter the "Site") from 1977 to 1981 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Karen Lee Taylor's exposure, Plaintiff has been diagnosed with Hypothyroidism, Kidney Cancer.

26

73.     Plaintiff Richard Parker III resides at 132 Tree Sap Dr., Weston, WV 26452. Plaintiff was formerly stationed at Richmond VA US Army Reserve Center, Virginia Beach VA Clinic (hereinafter the "Site") from 2005 to 2010 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Richard Parker III's exposure, Plaintiff has been diagnosed with Hyperthyroidism, Thyroid Disease.

74.     Plaintiff Michelle Bailey resides at 421 10th Ave., Huntington, WV 25701. Plaintiff was formerly stationed at FT. Campbell, Warner Barracks Bombergerg DE (hereinafter the "Site") from 1991 to 1995 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Michelle Bailey's exposure, Plaintiff has been diagnosed with Autoimmune Disorders, Diabetes, Hepatitis C, High Cholesterol, Hyperthyroidism, Hypothyroidism, Thyroid Disease, Tumor.

75.     Plaintiff Kenneth Cunningham resides at 4713 Guillot Rd., New Iberia, LA 70560. Plaintiff was formerly stationed at Chanute AFB, Homestead ARB (hereinafter the "Site") from 1973 to 1991 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct

27

and proximate result of Plaintiff Kenneth Cunningham's exposure, Plaintiff has been diagnosed with Hyperthyroidism, Skin Cancer, Thyroid Disease.

76.     Plaintiff Lyndon Alfred resides at 2726 Asbury Ave., Bensalem, PA 19020. Plaintiff was formerly stationed at Philadelphia Navy Yard, Norfolk NAS, NJRB Willow Grove (hereinafter the "Site") from 1986 to 2008 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Lyndon Alfred's exposure, Plaintiff has been diagnosed with Diabetes, High Blood Pressure, Hyperthyroidism, Kidney and Bladder Problems, Thyroid Disease.

77.     Plaintiff Agabita G. Rowe resides at 112 Leonelle Cir., Slidell, LA 70458. Plaintiff was formerly stationed at Lackland AFB, Wurtsmith AFB, Sheppard AFB, Scott AFB, Charleston AFB, Anderson AFB, Keesler AFB (hereinafter the "Site") from 1975 to 1995 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Agabita G. Rowe's exposure, Plaintiff has been diagnosed with High Blood Pressure, High Cholesterol, Pregnancy Problems, Thyroid Disease.

78.     Plaintiff Tim Martin resides at 7418 Wentworth Springs Rd., Georgetown, CA 95634. Plaintiff was formerly stationed at Lackland AFB, Whiteman AFB, Travis AFB (hereinafter the "Site") from 1982 to 2003 and was living on base at the Site during that time.

28

While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Tim Martin's exposure, Plaintiff has been diagnosed with Pancreatic Cancer.

79. Plaintiff Robert Piazza resides at 636 New Buckley St., bristol, PA 19007. Plaintiff was formerly stationed at NMC Portsmouth, Camp Kinser, NAS Norfolk (hereinafter the "Site") from 1987 to 1991 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Robert Piazza's exposure, Plaintiff has been diagnosed with Cardiac Problems, Diabetes, Hypothyroidism, Stroke, Thyroid Disease.

80. Plaintiff Pedro M. Carattini resides at URB. San Francisco 92 Calle San Miguel, Yauco, PR 00698. Plaintiff was formerly stationed at MCB Camp Lejeune, MCAS Cherry Point (hereinafter the "Site") from 1970 to 1973 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Pedro M. Carattini's exposure, Plaintiff has been diagnosed with High Blood Pressure, High Cholesterol, Thyroid Disease.

2:22-cv-00528-RMG   Date Filed 03/17/22   Entry Number 1-1   Page 37 of 82   INDEX NO. 157378/2022

81.     Plaintiff Agapito Arredondo resides at 24448 FM 508, Harlington, TX 78550. Plaintiff was formerly stationed at Camp Pendleton (hereinafter the "Site") from 1979 to 1983 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Agapito Arredondo's exposure, Plaintiff has been diagnosed with High Blood Pressure, Kidney Cancer.

82.     Plaintiff Alida Pugh resides at 4713 Guillot Rd., New Iberia, LA 70560. Plaintiff was formerly stationed at FT. Harrison, IHG Army, FT. Kobbe (hereinafter the "Site") from 1988 to 1992 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Alida Pugh's exposure, Plaintiff has been diagnosed with Ulcerative Colitis.

83.     Plaintiff James Hilley resides at 603 Flinderation Rd., Salem, WV 26426. Plaintiff was formerly stationed at Patrick AFB, Lackland AFB, Sheppard AFB, Malmstrom AFB, Kessler AFB, Cheyenne Mountain SFS, Ankara AFB, March AFB, Yokota AFB, Lowery AFB (hereinafter the "Site") from 1971 to 1991 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations

30

hazardous to their health. As a direct and proximate result of Plaintiff James Hilley's exposure, Plaintiff has been diagnosed with Cardiac Problems, Diabetes, Heart Attack, High Cholesterol, Kidney Cancer, Skin Cancer.

84.     Plaintiff Michael Chieffo resides at 5010 Hollis Goodwin Rd., Dora, AL 35062. Plaintiff was formerly stationed at Camp Lejeune (hereinafter the "Site") from 1984 to 1989 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Michael Chieffo's exposure, Plaintiff has been diagnosed with Liver Cancer.

85.     Plaintiff Larry Nelson resides at 4534 Marvista Trail, Dallas, TX 75236. Plaintiff was formerly stationed at Moffet Field NAS (hereinafter the "Site") from 1992 to 1994 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Larry Nelson's exposure, Plaintiff has been diagnosed with Cardiac Problems, Thyroid Disease.

86.     Plaintiff Timmy Stine resides at 1103 Gaywood St., San Diego, CA 92154. Plaintiff was formerly stationed at NAS Roosevelt Roads, NAS Whidbey Island (hereinafter the "Site") from 1981 to 1985 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water

31

containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Timmy Stine's exposure, Plaintiff has been diagnosed with Heart Attack, Hyperthyroidism, PTSD, Thyroid Disease.

87.     Plaintiff Matthew Stubblefield resides at 13126 38th St. NW, Lakebay, WA 98329. Plaintiff was formerly stationed at NS Great Lakes, NAS Bangor, NB Bangor (hereinafter the "Site") from 1995 to 2001 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Matthew Stubblefield's exposure, Plaintiff has been diagnosed with Kidney Cancer.

88.     Plaintiff John Calhoun resides at 2001 Ramrod Apt. 527, Henderson, NV 89014. Plaintiff was formerly stationed at FT. Dix, FT. Gordon, Germany, FT. Campbel, CA NationalGuard (hereinafter the "Site") from 1981 to 1996 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff John Calhoun's exposure, Plaintiff has been diagnosed with Thyroid Disease.

89.     Plaintiff Kathy Thornton resides at 885 Rockville Rd., South Fork, PA 15956. Plaintiff was formerly stationed at FT. McClellan, FT. Riley, Germany (hereinafter the "Site") from 1981 to 1992 and was living on base at the Site during that time. While living on base at the

Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Kathy Thornton's exposure, Plaintiff has been diagnosed with High Cholesterol, Hypothyroidism, Thyroid Disease, Ulcerative Colitis.

90.    Plaintiff Lloyd M. Bentley resides at 470 Webster St., Lagro, IN 46941. Plaintiff was formerly stationed at Camp Lejeune (hereinafter the "Site") from 1973 to 1974 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Lloyd M. Bentley's exposure, Plaintiff has been diagnosed with High Blood Pressure, High Cholesterol, Medical Monitoring, Thyroid Disease.

91.    Plaintiff Justin Harris resides at 1944 Pinion Rd., Gilmer, TX 75645. Plaintiff was formerly stationed at FT. Sam Houston, NSA Millington, NAS Meridian, NB San Diego, NS Norfolk, Corpus Christi NB, Camp Pendleton (hereinafter the "Site") from 1993 to 2013 and was living on base at the Site during that time. While living on base at the Site, Claimant was exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS. Claimant has been exposed for many years to PFAS as a result of the PFAS contamination at the Site, including at concentrations hazardous to their health. As a direct and proximate result of Plaintiff Justin Harris's exposure, Plaintiff has been diagnosed with Fibromyalgia, Hyperthyroidism, Sleep Apnea, Thyroid Disease.

33

92.     Personnel at the Site stored, handled, used, trained with, tested equipment with, otherwise discharged AFFF products in their facility, therefore contaminating groundwater supplies in the vicinity of the base.

93.     Plaintiffs have been exposed to PFAS, have elevated levels of these contaminants in their blood, and are at an increased risk of health effects, changes in thyroid hormone, kidney cancer, and other autoimmune diseases.

94.     Plaintiffs have a legitimate fear of developing additional injuries as a result of their exposure to PFAS, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, kidney cancer and other autoimmune diseases.

**B.     Defendants**

95.     The term "Defendants" refers to all Defendants named herein jointly and severally.

      i.     <u>The AFFF Defendants</u>

96.     The term **"AFFF Defendants"** refers collectively to Defendants 3M Company, Angus International Safety Group, Ltd., Amerex Corporation, Buckeye Fire Equipment Company, Carrier Global Corporation, Central Sprinkler, LLC, Chemguard Inc., Fire Products GP Holding, LLC, Johnson Controls International PLC, Kidde-Fenwal, Inc., and Tyco Fire Products L.P.,

97.     **Defendant The 3M Company f/k/a Minnesota Mining and Manufacturing Co. ("3M")** is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 3M Center, St. Paul, Minnesota 55144-1000.

98.     Beginning before 1970 and until at least 2002, 3M designed, manufactured, marketed, distributed, and sold AFFF containing PFAS, including but not limited to PFOA and PFOS.

34

99.     **Defendant Amerex Corporation ("Amerex")** is a corporation organized and existing under the laws of the State of Alabama, with its principal place of business located at 7595 Gadsden Highway, Trussville, AL 35173.

100.    Amerex is a manufacturer of firefighting products. Beginning in 1971, it was a manufacturer of hand portable and wheeled extinguishers for commercial and industrial applications.

101.    In 2011, Amerex acquired Solberg Scandinavian AS, one of the largest manufacturers of AFFF products in Europe.

102.    On information and belief, beginning in 2011, Amerex designed, manufactured, marketed distributed, and sold AFFF containing PFAS, including but not limited to PFOA and PFOS.

103.    **Defendant Tyco Fire Products LP ("Tyco")** is a limited partnership organized under the laws of the State of Delaware, with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143-2542.

104.    Tyco is the successor in interest of The Ansul Company ("Ansul"), having acquired Ansul in 1990.

105.    Beginning in or around 1975, Ansul designed, manufactured, marketed, distributed, and sold AFFF containing PFAS, including but not limited to PFOA and PFOS.

106.    After Tyco acquired Ansul in 1990, Tyco/Ansul continued to design, manufacture, market, distribute, and sell AFFF products containing PFAS, including but not limited to PFOA and PFOS.

NYSCEF DOC. NO. 1

107. **Defendant Chemguard, Inc. ("Chemguard")** is a corporation organized under the laws of the State of Texas, with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143.

108. On information and belief, Chemguard designed, manufactured, marketed, distributed, and sold AFFF products containing PFAS, including but not limited to PFOA and PFOS.

109. On information and belief, Chemguard was acquired by Tyco International Ltd. in 2011.

110. On information and belief, Tyco International Ltd. later merged into its subsidiary Tyco International plc in 2014 to change its jurisdiction of incorporation from Switzerland to Ireland.

111. **Defendant Buckeye Fire Equipment Company ("Buckeye")** is a corporation organized under the laws of the State of Ohio, with its principal place of business located at 110 Kings Road, Kings Mountain, North Carolina 28086.

112. On information and belief, Buckeye designed, manufactured, marketed, distributed, and sold AFFF products containing PFAS, including but not limited to PFOA and PFOS.

113. **Defendant Kidde-Fenwal, Inc. ("Kidde-Fenwal")** is a corporation organized under the laws of the State of Delaware, with its principal place of business at One Financial Plaza, Hartford, Connecticut 06101.

114. On information and belief, Kidde-Fenwal was an operating subsidiary of Kidde P.L.C. and manufactured AFFF following Kidde P.L.C.'s acquisition by United Technologies Corporation.

36

115.   On information and belief, Kidde-Fenwal is the entity that divested the AFFF business unit now operated by National Foam in 2013.

116.   **Defendant Carrier Global Corporation ("Carrier")** is a corporation organized under the laws of the State of Delaware, with its principal place of business at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418.

117.   On information and belief, Carrier was formed in March 2020 when United Technologies Corporation spun off its fire and security business before it merged with Raytheon Company in April 2020.

118.   On information and belief, Kidde-Fenwal became a subsidiary of Carrier when United Technologies Corporation spun off its fire and security business in March 2020.

119.   On information and belief, the AFFF Defendants designed, manufactured, marketed, distributed, and sold AFFF products containing PFOS, PFOA, and/or their chemical precursors that were stored, handled, used, trained with, tested equipment with, otherwise discharged, and/or disposed at the Sites.

ii.   The Fluorosurfactant Defendants

120.   The term **"Fluorosurfactant Defendants"** refers collectively to Defendants 3M, Arkema Inc., ChemDesign Products Incorporated, Chemguard Inc., Deepwater Chemicals, Inc., E.I. DuPont de Nemours and Company, The Chemours Company, The Chemours Company FC, LLC, DuPont de Nemours Inc., and Dynax Corporation.

121.   **Defendant Arkema Inc.** is a corporation organized and existing under the laws of Pennsylvania, with its principal place of business at 900 First Avenue, King of Prussia, PA 19406.

122.   Arkema Inc. develops specialty chemicals and polymers.

123.   Arkema, Inc. is an operating subsidiary of Arkema France, S.A.

124.    On information and belief, Arkema Inc. designed, manufactured, marketed, distributed, and sold fluorosurfactants containing PFOS, PFOA, and/or their chemical precursors for use in AFFF products.

125.    **Defendant ChemDesign Products Inc. ("ChemDesign")** is a corporation organized under the laws of Delaware, with its principal place of business located at 2 Stanton Street, Marinette, WI, 54143.

126.    On information and belief, ChemDesign designed, manufactured, marketed, distributed, and sold fluorosurfactants containing PFOS, PFOA, and/or their chemical precursors for use in AFFF products

127.    **Defendant Deepwater Chemicals, Inc. ("Deepwater")** is a corporation organized under the laws of Delaware, with its principal place of business located at 196122 E County Road 40, Woodward, OK, 73801.

128.    On information and belief, Deepwater Chemicals designed, manufactured, marketed, distributed, and sold fluorosurfactants containing PFOS, PFOA, and/or their chemical precursors for use in AFFF products

129.    **Defendant Dynax Corporation ("Dynax")** is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 103 Fairview Park Drive, Elmsford, New York 10523.

130.    On information and belief, Dynax entered into the AFFF market on or about 1991 and quickly became a leading global producer of fluorosurfactants and fluorochemical stabilizers containing PFOS, PFOA, and/or their chemical precursors.

131.    On information and belief, Dynax designed, manufactured, marketed, distributed, and sold fluorosurfactants and fluorochemical stabilizers containing PFOS, PFOA, and/or their chemical precursors for use in AFFF products.

132.    **Defendant E.I. du Pont de Nemours & Company ("DuPont")** is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805.

133.    **Defendant The Chemours Company ("Chemours Co.")** is a limited liability company organized under the laws of the State of Delaware, with its principal place of business located at 1007 Market Street, P.O. Box 2047, Wilmington, Delaware, 19899.

134.    In 2015, DuPont spun off its performance chemicals business to Chemours Co., along with vast environmental liabilities which Chemours Co. assumed, including those related to PFOS and PFOA and fluorosurfactants.  On information and belief, Chemours Co. has supplied fluorosurfactants containing PFOS and PFOA, and/or their chemical precursors to manufacturers of AFFF products.

135.    On information and belief, Chemours Co. was incorporated as a subsidiary of DuPont as of April 30, 2015.  From that time until July 2015, Chemours Co. was a wholly-owned subsidiary of DuPont.

136.    In July 2015, DuPont spun off Chemours Co. and transferred to Chemours Co. its "performance chemicals" business line, which includes its fluoroproducts business, distributing shares of Chemours Co. stock to DuPont stockholders, and Chemours Co. has since been an independent, publicly-traded company.

39

137.    **Defendant The Chemours Company FC, LLC ("Chemours FC")** is a limited liability company organized under the laws of the State of Delaware, with its principal place of business located at 1007 Market Street, Wilmington, Delaware, 19899.

138.    **Defendant Corteva, Inc. ("Corteva")** is a corporation organized and existing under the laws of Delaware, with its principal place of business at 974 Centre Rd., Wilmington, Delaware 19805.

139.    **Defendant Dupont de Nemours Inc**. **f/k/a DowDuPont, Inc. ("Dupont de Nemours Inc.")** is a corporation organized and existing under the laws of Delaware, with its principal place of business at 974 Centre Road, Wilmington, Delaware 19805 and 2211 H.H. Dow Way, Midland, Michigan 48674.

140.    On June 1, 2019, DowDuPont separated its agriculture business through the spin-off of Corteva.

141.    Corteva was initially formed in February 2018. From that time until June 1, 2019, Corteva was a wholly-owned subsidiary of DowDuPont.

142.    On June 1, 2019, DowDuPont distributed to DowDuPont stockholders all issued and outstanding shares of Corteva common stock by way of a pro-rata dividend. Following that distribution, Corteva became the direct parent of E. I. Du Pont de Nemours & Co.

143.    Corteva holds certain DowDuPont assets and liabilities, including DowDuPont's agriculture and nutritional businesses.

144.    On June 1, 2019, DowDuPont, the surviving entity after the spin-off of Corteva and of another entity known as Dow, Inc., changed its name to DuPont de Nemours, Inc., to be known as DuPont ("New DuPont"). New DuPont retained assets in the specialty products business lines

40

following the above-described spin-offs, as well as the balance of the financial assets and liabilities of E.I DuPont not assumed by Corteva.

145.    Defendants E. I. Du Pont de Nemours and Company; The Chemours Company; The Chemours Company FC, LLC; Corteva, Inc.; and DuPont de Nemours, Inc. are collectively referred to as "DuPont" throughout this Complaint.

146.    On information and belief, DuPont designed, manufactured, marketed, distributed, and sold fluorosurfactants containing PFOS, PFOA, and/or their chemical precursors for use in AFFF products.

147.    On information and belief, 3M and Chemguard also designed, manufactured, marketed, distributed, and sold fluorosurfactants containing PFOS, PFOA, and/or their chemical precursors for use in AFFF products.

148.    On information and belief, the Fluorosurfactant Defendants designed, manufactured, marketed, distributed, and sold fluorosurfactants containing PFOS, PFOA, and/or their chemical precursors for use in AFFF products that were stored, handled, used, trained with, tested equipment with, otherwise discharged, and/or disposed at the Sites.

            iii.    The PFC Defendants

149.    The term **"PFC Defendants"** refers collectively to 3M, AGC Chemicals Americas Inc., Archroma U.S. Inc., ChemDesign Products Inc., Chemicals, Inc., Clariant Corporation, Deepwater Chemicals, Inc., E. I. DuPont de Nemours and Company, The Chemours Company, The Chemours Company FC, LLC, Corteva, Inc., DuPont de Nemours Inc., and Nation Ford Chemical Company.

150.    **Defendant AGC Chemicals Americas, Inc. ("AGC")** is a corporation organized and existing under the laws of Delaware, having its principal place of business at 55 East Uwchlan Avenue, Suite 201, Exton, PA 19341.

41

151.    On information and belief, AGC Chemicals Americas, Inc. was formed in 2004 and is a subsidiary of AGC Inc., a foreign corporation organized under the laws of Japan, with its a principal place of business in Tokyo, Japan.

152.    AGC manufactures specialty chemicals. It offers glass, electronic displays, and chemical products, including resins, water and oil repellants, greenhouse films, silica additives, and various fluorointermediates.

153.    On information and belief, AGC designed, manufactured, marketed, distributed, and sold PFCs containing PFOS, PFOA, and/or their chemical precursors for use in manufacturing the fluorosurfactants used in AFFF products.

154.    **Defendant Archroma U.S., Inc. ("Archroma")** is a corporation organized and existing under the laws of Delaware, with its a principal place of business at 5435 77 Center Drive, Charlotte, North Carolina 28217.

155.    On information and belief, Archroma was formed in 2013 when Clariant Corporation divested its textile chemicals, paper specialties, and emulsions business to SK Capital Partners.

156.    On information and belief, Archroma designed, manufactured, marketed, distributed, and sold PFCs containing PFOS, PFOA, and/or their chemical precursors for use in manufacturing the fluorosurfactants used in AFFF products.

157.    **Defendant Chemicals, Inc. ("Chemicals, Inc.")** is a corporation organized and existing under the laws of Texas, with its principal place of business located at 12321 Hatcherville, Baytown, TX 77520.

158. On information and belief, Chemicals, Inc. supplied PFCs containing PFOS, PFOA, and/or their chemical precursors for use in manufacturing the fluorosurfactants used in AFFF products.

159. **Defendant Clariant Corporation ("Clariant")** is a corporation organized and existing under the laws of New York, with its principal place of business at 4000 Monroe Road, Charlotte, North Carolina 28205.

160. On information and belief, Clariant is the successor in interest to the specialty chemicals business of Sandoz Chemical Corporation ("Sandoz"). On information and belief, Sandoz spun off its specialty chemicals business to form Clariant in 1995.

161. On information and belief, Clariant supplied PFCs containing PFOS, PFOA, and/or their chemical precursors for use in manufacturing the fluorosurfactants used in AFFF products.

162. **Defendant Nation Ford Chemical Co. ("Nation Ford")** is a corporation organized and existing under the laws of South Carolina, with its principal place of business located at 2300 Banks Street, Fort Mill, SC 29715.

163. On information and belief, Nation Ford supplied PFCs containing PFOS, PFOA, and/or their chemical precursors for use in manufacturing the fluorosurfactants used in AFFF products.

164. On information and belief, 3M, ChemDesign, Deepwater Chemicals, and DuPont also supplied PFCs containing PFOS, PFOA, and/or their chemical precursors for use in manufacturing the fluorosurfactants used in AFFF products.

165. On information and belief, the Fluorochemical Defendants supplied PFCs containing PFOS, PFOA, and/or their chemical precursors for use in manufacturing the

43

fluorosurfactants used in AFFF products that were stored, handled, used, trained with, tested equipment with, otherwise discharged, and/or disposed at the Sites.

### iv.   Doe Defendants 1-20

166.    Doe Defendants 1-20 are unidentified entities or persons whose names are presently unknown and whose actions, activities, omissions  (a) may have permitted, caused and/or contributed to the contamination of Plaintiff's water sources or supply wells; or (b) may be vicariously responsible for entities or persons who permitted, caused and/or contributed to the contamination of Plaintiff's water sources or supply wells;  or (c) may be successors in interest to entities or persons who permitted, caused and/or permitted , contributed to the contamination of Plaintiff's water sources or supply wells. After reasonable search and investigation to ascertain the Doe Defendants actual names, the Doe Defendants' actual identities are unknown to Plaintiff as they are not linked with any of the Defendants on any public source.

167.    The Doe Defendants 1-20 either in their own capacity or through a party they are liable for: (1) designed, manufactured, marketed, distributed, and/or sold AFFF products containing PFOS, PFOA, and/or their chemical precursors, and/or designed, manufactured, marketed, distributed, and/or sold the fluorosurfactants and/or PFCs contained in AFFF/Component Products; or (2) used, handled, transported, stored, discharged, disposed of, designed, manufactured, marketed, distributed, and/or sold PFOS, PFOA, and/or their chemical precursors, or other non-AFFF products containing PFOS, PFOA, and/or their chemical precursors; or (3) failed to timely perform necessary and reasonable response and remedial measures to releases of PFOS, PFOA, and/or their chemical precursors, or other non-AFFF products containing PFOS, PFOA, and/or their chemical precursors in to the environment in which Plaintiff's water supplies and well exist.

168.     All Defendants, at all times material herein, acted by and through their respective

agents, servants, officers and employees, actual or ostensible, who then and there were acting

within the course and scope of their actual or apparent agency, authority or duties. Defendants are

liable based on such activities, directly and vicariously.

169.     Defendants represent all or substantially all of the market for AFFF/Component

Products at the Sites.

### FACTUAL ALLEGATIONS RELEVANT TO ALL CAUSES OF ACTION

**A.     PFOA and PFOS and Their Risk to Public Health**

170.     PFAS are chemical compounds containing fluorine and carbon. These substances

have been used for decades in the manufacture of, among other things, household and commercial

products that resist heat, stains, oil, and water. These substances are not naturally occurring and

must be manufactured.

171.     The two most widely studied types of these substances are PFOA and PFOS.

172.     PFOA and PFOS have unique properties that cause them to be: (i) mobile and

persistent, meaning that they readily spread into the environment where they break down very

slowly; (ii) bioaccumulative and biomagnifying, meaning that they tend to accumulate in

organisms and up the food chain; and (iii) toxic, meaning that they pose serious health risks to

humans and animals.

173.     PFOA and PFOS easily dissolve in water, and thus they are mobile and easily

spread in the environment. PFOA and PFOS also readily contaminate soils and leach from the soil

into groundwater, where they can travel significant distances.

174.     PFOA and PFOS are characterized by the presence of multiple carbon-fluorine

bonds, which are exceptionally strong and stable. As a result, PFOA and PFOS are thermally,

45

chemically, and biologically stable. They resist degradation due to light, water, and biological processes.

175.    Bioaccumulation occurs when an organism absorbs a substance at a rate faster than the rate at which the substance is lost by metabolism and excretion. Biomagnification occurs when the concentration of a substance in the tissues of organisms increases as the substance travels up the food chain.

176.    PFOA and PFOS bioaccumulate/biomagnify in numerous ways. First, they are relatively stable once ingested, so that they bioaccumulate in individual organisms for significant periods of time. Because of this stability, any newly ingested PFOA and PFOS will be added to any PFOA and PFOS already present. In humans, PFOA and PFOS remain in the body for years.

177.    PFOA and PFOS biomagnify up the food chain. This occurs, for example, when humans eat fish that have ingested PFOA and/or PFOS.

178.    The chemical structure of PFOA and PFOS makes them resistant to breakdown or environmental degradation. As a result, they are persistent when released into the environment.

179.    Exposure to PFAS is toxic and poses serious health risks to humans and animals.

180.    PFAS are readily absorbed after consumption or inhalation and accumulate primarily in the bloodstream, kidney, and liver.

**B.    Defendants' Manufacture and Sale of AFFF/Component Products**

181.    AFFF is a type of water-based foam that was first developed in the 1960s to extinguish hydrocarbon fuel-based fires.

182.    AFFF is a Class-B firefighting foam. It is mixed with water and used to extinguish fires that are difficult to fight, particularly those that involve petroleum or other flammable liquids.

183.    AFFF is synthetically formed by combining fluorine-free hydrocarbon foaming agents with fluorosurfactants. When mixed with water, the resulting solution produces an aqueous

46

film that spreads across the surface of hydrocarbon fuel. This film provides fire extinguishment and is the source of the designation aqueous film-forming foam.

184.    Beginning in the 1960s, the AFFF Defendants designed, manufactured, marketed, distributed, and/or sold AFFF products that used fluorosurfactants containing either PFOS, PFOA, or the chemical precursors that degrade into PFOS and PFOA.

185.    AFFF can be made without the fluorosurfactants that contain PFOA, PFOS, and/or their precursor chemicals. Fluorine-free firefighting foams, for instance, do not release PFOA, PFOS, and/or their precursor chemicals into the environment.

186.    AFFF that contains fluorosurfactants, however, is better at extinguishing hydrocarbon fuel-based fires due to their surface-tension lowering properties, essentially smothering the fire and starving it of oxygen.

187.    The fluorosurfactants used in 3M's AFFF products were manufactured by 3M's patented process of electrochemical fluorination ("ECF").

188.    The fluorosurfactants used in other AFFF products sold by the AFFF Defendants were manufactured by the Fluorosurfactant Defendants through the process of telomerization.

189.    The PFCs the Fluorosurfactant Defendants needed to manufacture those fluorosurfactants contained PFOS, PFOA, and/or their chemical precursors and were designed, manufactured, marketed, distributed and/or sold by the PFC Defendants.

190.    On information and belief, the PFC and Fluorosurfactant Defendants were aware that the PFCs and fluorosurfactants they designed, manufactured, marketed, distributed, and/or sold would be used in the AFFF products designed, manufactured, marketed, distributed, and/or sold by the AFFF Defendants.

191.    On information and belief, the PFC and Fluorosurfactant Defendants designed, manufactured, marketed, distributed, and/or sold the PFC and/or fluorosurfactants contained in the AFFF products discharged into the environment at the Site during fire protection, training, and response activities, resulting in widespread PFAS contamination.

192.    On information and belief, the AFFF Defendants designed, manufactured, marketed, distributed, and/or sold the AFFF products discharged into the environment at the Site during fire protection, training, and response activities, resulting in widespread PFAS contamination.

**C.      Defendants' Knowledge of the Threats to Public Health and the Environment Posed by PFOS and PFOA**

193.    On information and belief, by at least the 1970s 3M and DuPont knew or should have known that PFOA and PFOS are mobile and persistent, bioaccumulative and biomagnifying, and toxic.

194.    On information and belief, 3M and DuPont concealed from the public and government agencies its knowledge of the threats to public health and the environment posed by PFOA and PFOS.

195.    Some or all of the Defendants understood how stable the fluorinated surfactants used in AFFF are when released into the environment from their first sale to a customer, yet they failed to warn their customers or provide reasonable instruction on how to manage wastes generated from their products.

i.      1940s and 1950s: Early Warnings About the Persistence of AFFF

196.    In 1947, 3M started its fluorochemical program, and within four years, it began selling its PFOA to DuPont. The persistence and contaminating nature of the fluorosurfactants

48

contained in AFFF products were understood prior to their commercial application at 3M's Cottage Grove facility in Minnesota.

197. The inventor of 3M's ECF process was J.H. Simons. Simons' 1948 patent for the ECF process reported that PFCs are "non-corrosive, and of little chemical reactivity," and "do not react with any of the metals at ordinary temperatures and react only with the more chemically reactive metals such as sodium, at elevated temperatures."[1]

198. Simons further reported that fluorosurfactants produced by the ECF process do not react with other compounds or reagents due to the blanket of fluorine atoms surrounding the carbon skeleton of the molecule. 3M understood that the stability of the carbon-to-fluorine bonds prevented its fluorosurfactants from undergoing further chemical reactions or degrading under natural processes in the environment.[2]

199. The thermal stability of 3M's fluorosurfactants was also understood prior to commercial production. Simons' patent application further discloses that the fluorosurfactants produced by the ECF process were thermally stable at temperatures up to 750° C (1382° F). Additional research by 3M expanded the understanding of the thermal stability of perfluorocarbon compounds.[3]

200. Nowhere in any Material Safety Data Sheet for any of Defendants' AFFF/Component Products is information on the thermal stability of those products disclosed. Failure to disclose knowledge of the stability of the PFCs and fluorosurfactants used in AFFF

---

[1] Simons, J. H., Fluorination of Organic Compounds, U.S. Patent No. 2,447,717. August 24, 1948, *available at* https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1005.pdf.

[2] Simons, J. H., 1950. Fluorocarbons and Their Production. Fluorine Chemistry, 1(12): 401-422, *available* at https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX3008.pdf.

[3] Bryce, T. J., 1950. Fluorocarbons - Their Properties and Wartime Development. Fluorine Chemistry, 1(13): 423-462.

49

products to customers is a failure to warn just how indestructible the AFFF's ingredients are when released to unprotected water sources and even treatment plants.

ii.    1960s: AFFF's Environmental Hazards Come into Focus

201.    By at least the end of the 1960s, additional research and testing performed by 3M and DuPont indicated that fluorosurfactants, including at least PFOA, because of their unique chemical structure, were resistant to environmental degradation and would persist in the environment essentially unaltered if allowed to enter the environment.

202.    One 3M employee wrote in 1964: "This chemical stability also extends itself to all types of biological processes; there are no known biological organisms that are able to attack the carbon-fluorine bond in a fluorocarbon."[4] Thus, 3M knew by the mid-1960s that its surfactants were immune to chemical and biological degradation in soils and groundwater.

203.    3M also knew by 1964 that when dissolved, fluorocarbon carboxylic acids and fluorocarbon sulfonic acids dissociated to form highly stable perfluorocarboxylate and perfluorosulfonate ions. Later studies by 3M on the adsorption and mobility of FC-95 and FC-143 (the ammonium salt of PFOA) in soils indicated very high solubility and very high mobility in soils for both compounds.[5]

iii.    1970s: Internal Studies Provide Evidence of Environmental and Health Risks

204.    By 1950, 3M knew that the fluorosurfactants used in its AFFF product(s) would not degrade when released to the environment, but would remain intact and persist. Two decades

---

[4]  Bryce, H.G., Industrial and Utilitarian Aspects of Fluorine Chemistry (1964), *available* at https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX3022.pdf.

[5] Technical Report Summary re : Adsorption of FC 95 and FC143 on Soil, Feb. 27, 1978, *available at* https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1158.pdf.

later—and after the establishment of a robust market of AFFFs using fluorosurfactants—3M finally got around to looking at the environmental risks that fluorosurfactants posed.

205.     An internal memo from 3M in 1971 states that "the thesis that there is 'no natural sink' for fluorocarbons obviously demands some attention."[6] Hence, 3M understood at the very least that the fluorosurfactant used in its AFFF products would, in essence, never degrade once it was released into the environment.

206.     By the mid-1970s, 3M and Ansul (and possibly other Defendants) had an intimate understanding of the persistent nature of PFCs. A 1976 study, for example, observed no biodegradation of FC-95, the potassium salt of PFOS; a result 3M characterized as "unsurprising" in light of the fact that "[b]iodegradation of FC 95 is improbable because it is completely fluorinated."[7]

207.     In 1977, Ansul authored a report titled "Environmentally Improved AFFF," which acknowledged that releasing AFFF into the environment could pose potential negative impacts to groundwater quality.[8] Ansul wrote: "The purpose of this work is to explore the development of experimental AFFF formulations that would exhibit reduced impact on the environment while retaining certain fire suppression characteristic . . . improvements [to AFFF formulations] are desired in the environmental area, i.e., development of compositions that have a reduced impact on the environment without loss of fire suppression effectiveness." Thus, Ansul knew by the mid-1970s that the environmental impact of AFFF needed to be reduced, yet there is no evidence that Ansul (or any other Defendant) ever pursued initiatives to do so.

---

[6] Memorandum from H.G. Bryce to R.M. Adams re : Ecological Aspects of Fluorocarbons, Sept. 13, 1971, *available at* https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1088.pdf.

[7] Technical Report Summary, August 12, 1976 [3MA01252037].

[8] Ansul Co., Final Report: Environmentally Improved AFFF, N00173-76-C-0295, Marinette, WI, Dec. 13, 1977, *available at* https://apps.dtic.mil/dtic/tr/fulltext/u2/a050508.pdf.

51

208.    A 1978 3M biodegradation study likewise reported that an "extensive study strongly suggest[ed]" one of its PFCs is "likely to persist in the environment for extended period unaltered by metabolic attack."[9] A year later, a 3M study reported that one of its fluorosurfactants "was found to be completely resistant to biological test conditions," and that it appeared waterways were the fluorosurfactant's "environmental sink."[10]

209.    In 1979, 3M also completed a comprehensive biodegradation and toxicity study covering investigations between 1975 and 1978.[11] More than a decade after 3M began selling AFFF containing fluorosurfactants it wrote: "there has been a general lack of knowledge relative to the environmental impact of these chemicals." The report ominously asked, "If these materials are not biodegradable, what is their fate in the environment?"

210.    During the 1970s, 3M also learned that the fluorosurfactants used in AFFF accumulated in the human body and were "even more toxic" than previously believed.

211.    In 1975, 3M learns that PFAS was present in the blood of the general population.[12] Since PFOA and PFOS are not naturally occurring, this finding should have alerted 3M to the possibility that their products were a source of this PFOS. The finding also should have alerted 3M to the possibility that PFOS might be mobile, persistent, bioaccumulative, and biomagnifying, as those characteristics could explain how PFOS from 3M's products ended up in human blood.

---

[9] Technical Report Summary re : Fate of Fluorochemicals in the Environment, Biodegradation Studies of Fluorocarbons - II, Jan. 1, 1978, *available at* https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1153.pdf.

[10] Technical Report Summary re : Fate of Fluorochemicals in the Environment, Biodegradation Studies of Fluorocarbons - III, July 19, 1978, *available at* https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1179.pdf.

[11] Technical Report Summary, Final Comprehensive Report on FM 3422, Feb. 2, 1979, *available at* https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX2563.pdf.

[12] Memorandum from G.H. Crawford to L.C. Krogh et al. re: Fluorocarbons in Human Blood Plasma, Aug. 20, 1975, *available at* https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1118.pdf.

212.     In 1976, 3M found PFAS in the blood of its workers at levels "up to 1000 times

'normal' amounts of organically bound fluorine in their blood."[13] This finding should have alerted

3M to the same issues raised by the prior year's findings.

213.     Studies by 3M in 1978 showed that PFOA reduced the survival rate of fathead

minnow fish eggs,[14] that PFOS was toxic to monkeys,[15] and that PFOS and PFOA were toxic to

rats.[16] In the study involving monkeys and PFOS, all of the monkeys died within days of ingesting

food contaminated with PFOS.

214.     In 1979, 3M and DuPont discussed 3M's discovery of PFOA in the blood of its

workers and came to the same conclusion that there was "no reason" to notify the EPA of the

finding.[17]

iv.     1980s and 1990s: Evidence of AFFF's Health Risks Continues to Mount

215.     By at least the end of the 1980s, additional research and testing performed by

Defendants, including at least 3M and DuPont, indicated that elevated incidence of certain cancers

and other adverse health effects, including elevated liver enzymes and birth defects, had been

observed among workers exposed to such materials, including at least PFOA, but such data was

---

[13]     3M Chronology – Fluorochemicals in Blood, Aug. 26, 1977, *available at* https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1144.pdf.

[14] The Effects of Continuous Aqueous Exposure to 78.03 on Hatchability of Eggs and Growth and Survival of Fry of Fathead Minnow, June 1978, *available at* https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1176.pdf.

[15]     Ninety-Day Subacute Rhesus Monkey Toxicity Study, Dec. 18, 1978, *available at* https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1191.pdf; Aborted FC95 Monkey Study, Jan. 2, 1979, *available at* https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1193.pdf.

[16]     Acute Oral Toxicity (LD$_{50}$) Study in Rats (FC-143), May 5, 1978, *available at* https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1170.pdf; FC-95, FC-143 and FM-3422 – 90 Day Subacute Toxicity Studies Conducted at IRDC – Review of Final Reports and Summary, Mar. 20, 1979, *available at* https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1199.pdf.

[17] Memorandum from R.A. Prokop to J.D. Lazerte re: Disclosure of Information on Levels of Fluorochemicals in Blood, July 26, 1979, *available at* https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX2723.pdf.

53

not published, provided to governmental entities as required by law, or otherwise publicly disclosed at the time.

216.    In 1981, DuPont tested for and found PFOA in the blood of female plant workers Parkersburg, West Virginia. DuPont observed and documented pregnancy outcomes in exposed workers, finding two of seven children born to female plant workers between 1979 and 1981 had birth defects—one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.[18]

217.    In 1983, 3M researchers concluded that concerns about PFAS "give rise to concern for environmental safety," including "legitimate questions about the persistence, accumulation potential, and ecotoxicity of fluorochemicals in the environment."[19] That same year, 3M completed a study finding that PFOS caused the growth of cancerous tumors in rats.[20] This finding was later shared with DuPont and led them to consider whether "they may be obliged under their policy to call FC-143 a carcinogen in animals."[21]

218.    In 1984, 3M documented a trend of increasing levels of PFOS in the bodies of 3M workers, leading one of the company's medical officers to warn in an internal memo: "we must view this present trend with serious concern. It is certainly possible that . . . exposure opportunities are providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."[22]

---

[18] C-8 Blood Sampling Results, *available at* http://tiny.cc/v8z1mz.

[19] 3M Environmental Laboratory (EE & PC), Fate of Fluorochemicals - Phase II, May 20, 1983, *available at* https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1284.pdf.

[20] Two Year Oral (Diet) Toxicity/Carcinogenicity Study of Fluorochemical FC-143 in Rats, Volume 1 of 4, Aug. 29, 1987, *available at* https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1337.pdf.

[21] Memorandum from R.G. Perkins to F.D. Griffith re: Summary of the Review of the FC-143 Two-Year Feeder Study Report to be presented at the January 7, 1988 meeting with DuPont, January 5, 1988, *available at* https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1343.pdf.

[22] Memorandum from D.E. Roach to P.F. Riehle re: Organic Fluorine Levels, Aug. 31, 1984, *available at* https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1313.pdf.

54

219.    A 1997 material safety data sheet ("MSDS") for a non-AFFF product made by 3M listed its only ingredients as water, PFOA, and other perfluoroalkyl substances and warned that the product includes "a chemical which can cause cancer." The MSDS cited "1983 and 1993 studies conducted jointly by 3M and DuPont" as support for this statement. On information and belief, the MSDS for 3M's AFFF products did not provide similar warnings or information.

    v.    Defendants Hid What They Knew from the Government and the Public.

220.    Federal law requires chemical manufacturers and distributors to immediately notify the EPA if they have information that "reasonably supports the conclusion that such substance or mixture presents a substantial risk of injury to health or the environment." Toxic Substances Control Act ("TSCA") § 8(e), 15 U.S.C. § 2607(e)

221.    In April 2006, 3M agreed to pay EPA a penalty of more than $1.5 million after being cited for 244 violations of the TSCA, which included violations for failing to disclose studies regarding PFOS, PFOA, and other PFCs dating back decades.

222.    Likewise, in December 2005, the EPA announced it was imposing the "Largest Environmental Administrative Penalty in Agency History" against DuPont based on evidence that it violated the TSCA by concealing the environmental and health effects of PFOA.

223.    On information and belief, Defendants knew or should have known that AFFF containing PFOA or PFOS would very likely injure and/or threaten public health and the environment, even when used as intended or directed.

224.    Defendants failed to warn of these risks to the environment and public health, including the impact of their AFFF/Component Products on the quality of unprotected water sources.

225.    Defendants were all sophisticated and knowledgeable in the art and science of designing, formulating, and manufacturing AFFF/Component Products. They understood far more

55

about the properties of their AFFF/Component Products—including the potential hazards they posed to human health and the environment—than any of their customers. Still, Defendants declined to use their sophistication and knowledge to design safer products.

### D. The Impact of PFOS and PFOA on the Environment and Human Health Is Finally Revealed

226. As discussed above, neither 3M, DuPont, nor, on information and belief, any other Defendant complied with their obligations to notify EPA about the "substantial risk of injury to health or the environment" posed by their AFFF/Component Products. *See* TSCA § 8(e).

227. Despite decades of research, 3M first shared its concerns with EPA in the late 1990s. In a May 1998 report submitted to EPA, "3M chose to report simply that PFOS had been found in the blood of animals, which is true but omits the most significant information," according to a former 3M employee.[23]

228. On information and belief, 3M began in 2000 to phase out its production of products that contained PFOS and PFOA in response to pressure from the EPA.

229. Once the truth about PFOS and PFOA was revealed, researchers began to study the environmental and health effects associated with them, including a "C8 Science Panel" formed out of a class action settlement arising from contamination from DuPont's Washington Works located in Wood County, West Virginia.

230. The C8 panel consisted of three epidemiologists specifically tasked with determining whether there was a probable link between PFOA exposure and human diseases. In 2012, the panel found probable links between PFOA and kidney cancer, testicular cancer,

---

[23] Letter from R. Purdy, Mar. 28, 1999, *available at* https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1001.pdf.

56

ulcerative colitis, thyroid disease, pregnancy-induced hypertension (including preeclampsia), and hypercholesterolemia.

231.   Human health effects associated with PFOS exposure include immune system effects, changes in liver enzymes and thyroid hormones, low birth weight, high uric acid, and high cholesterol. In laboratory testing on animals, PFOA and PFOS have caused the growth of tumors, changed hormone levels, and affected the function of the liver, thyroid, pancreas, and immune system.

232.   The injuries caused by PFAS can arise months or years after exposure.

233.   Even after the C8 Science Panel publicly announced that human exposure to 50 parts per trillion, or more, of PFOA in drinking water for one year or longer had "probable links" with certain human diseases, including kidney cancer, testicular cancer, ulcerative colitis, thyroid disease, preeclampsia, and medically-diagnosed high cholesterol, Defendants repeatedly assured and represented to governmental entities, their customers, and the public (and continue to do so) that the presence of PFOA in human blood at the levels found within the United States presents no risk of harm and is of no legal, toxicological, or medical significance of any kind.

234.   Furthermore, Defendants have represented to and assured such governmental entities, their customers, and the public (and continue to do so) that the work of the independent C8 Science Panel was inadequate to satisfy the standards of Defendants to prove such adverse effects upon and/or any risk to humans with respect to PFOA in human blood.

235.   At all relevant times, Defendants, through their acts and/or omissions, controlled, minimized, trivialized, manipulated, and/or otherwise influenced the information that was published in peer-review journals, released by any governmental entity, and/or otherwise made available to the public relating to PFAS in human blood and any alleged adverse impacts and/or

risks associated therewith, effectively preventing the public from discovering the existence and extent of any injuries/harm as alleged herein.

236.    On May 2, 2012, the EPA published its Third Unregulated Contaminant Monitoring Rule ("UCMR3"), requiring public water systems nationwide to monitor for thirty contaminants of concern between 2013 and 2015, including PFOS and PFOA.[24]

237.    In the May 2015 "Madrid Statement on Poly- and Perfluoroalkyl Substances (PFAS's)," scientists and other professionals from a variety of disciplines, concerned about the production and release into the environment of PFOA, called for greater regulation, restrictions, limits on the manufacture and handling of any PFOA containing product, and to develop safe non-fluorinated alternatives to these products to avoid long-term harm to human health and the environment.[25]

238.    On May 25, 2016, the EPA released a lifetime health advisory (HAs) and health effects support documents for PFOS and PFOA.[26] *See* Fed. Register, Vol. 81, No. 101, May 25, 2016. The EPA developed the HAs to assist governmental officials in protecting public health when PFOS and PFOA are present in drinking water. The EPA HAs identified the concentration of PFOS and PFOA in drinking water at or below which adverse health effects are not anticipated to occur over a lifetime of exposure at 0.07 ppb or 70 ppt. The HAs were based on peer-reviewed studies of the effects of PFOS and PFOA on laboratory animals (rats and mice) and were also informed by epidemiological studies of human populations exposed to PFOS. These studies

---

[24] *Revisions to the Unregulated Contaminant Monitoring Regulation (UCMR 3) for Public Water Systems*, 77 Fed. Reg: 26072 (May 2, 2012).

[25] Blum A, Balan SA, Scheringer M, Trier X, Goldenman G, Cousins IT, Diamond M, Fletcher T, Higgins C, Lindeman AE, Peaslee G, de Voogt P, Wang Z, Weber R. 2015. The Madrid statement on poly- and perfluoroalkyl substances (PFASs). Environ Health Perspect 123:A107–A111; http://dx.doi.org/10.1289/ehp.1509934.

[26] *See* Fed. Register, Vol. 81, No. 101, May 25, 2016, Lifetime Health Advisories and Health Effects Support Documents for Perfluorooctanoic Acid and Perfluorooctane Sulfonate.

indicate that exposure to PFOS and PFOA over these levels may result in adverse health effects, including:

    a.  Developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations);

    b.  Cancer (testicular and kidney);

    c.  Liver effects (tissue damage);

    d.  Immune effects (e.g., antibody production and immunity);

    e.  Thyroid disease and other effects (e.g., cholesterol changes).

239.    In addition, PFOS and PFOA are hazardous materials because they pose a "present or potential threat to human health."[27]

240.    In 2016, the National Toxicology Program of the United States Department of Health and Human Services ("NTP") and the International Agency for Research on Cancer ("IARC") both released extensive analyses of the expanding body of research regarding the adverse effects of PFCs. The NTP concluded that both PFOA and PFOS are "presumed to be an immune hazard to humans" based on a "consistent pattern of findings" of adverse immune effects in human (epidemiology) studies and "high confidence" that PFOA and PFOS exposure was associated with suppression of immune responses in animal (toxicology) studies.[28]

241.    IARC similarly concluded that there is "evidence" of "the carcinogenicity of . . . PFOA" in humans and in experimental animals, meaning that "[a] positive association has been

---

[27] *Id.*; *see also National Ass'n for Surface Finishing v. EPA*, 795 F.3d 1, 3, 6 (D.C. Cir. 2015) (referring to PFOS as a "toxic compound" and a "hazardous chemical.").

[28] *See* U.S. Dep't of Health and Human Services, Nat'l Toxicology Program, *NTP Monograph: Immunotoxicity Associated with Exposure to Perfluorooctanoic Acid or Perfluorooctane Sulfonate* (Sept. 2016), at 1, 17, 19, *available at* https://ntp.niehs.nih.gov/ntp/ohat/pfoa_pfos/pfoa_pfosmonograph_508.pdf

59

observed between exposure to the agent and cancer for which a causal interpretation is . . . credible."[29]

242.     California has listed PFOA and PFOS to its Proposition 65 list as a chemical known to cause reproductive toxicity under the Safe Drinking Water and Toxic Enforcement Act of 1986.[30]

243.     The United States Senate and House of Representatives passed the National Defense Authorization Act in November 2017, which included $42 Million to remediate PFC contamination from military bases, as well as devoting $7 Million toward the Investing in Testing Act, which authorizes the Center for Disease Control and Prevention ("CDC") to conduct a study into the long-term health effects of PFOA and PFOS exposure.[31] The legislation also required that the Department of Defense submit a report on the status of developing a new military specification for AFFF that did not contain PFOS or PFOA.[32]

244.     In June 2018, the Agency for Toxic Substances and Disease Registry ("ATSDR") and EPA released a draft toxicological profile for PFOS and PFOA and recommended the drinking water advisory levels be lowered to 11 ppt for PFOA and 7 ppt for PFOS.[33]

---

[29] *See* Int'l Agency for Research on Cancer, IARC Monographs: *Some Chemicals Used as Solvents and in Polymer Manufacture* (Dec. 2016), at 27, 97, *available at* http://monographs.iarc.fr/ENG/Monographs/vol110/mono110.pdf.

[30] California Office of Environmental Health Hazard Assessment, *Chemicals Listed Effective Nov. 10, 2017 as Known to the State of California to Cause Reproductive Toxicity: Perfluorooctanoic Acid (PFOA) and Perfluorooctane Sulfonate (PFOS)*, Nov. 9, 2017, *available at* https://oehha.ca.gov/proposition-65/crnr/chemicals-listed-effective-november-10-2017-known-state-california-cause.

[31] National Defense Authorization Act for Fiscal Year 2018, H.R. 2810, 115th Congress (2017), *available at* https://www.congress.gov/115/plaws/publ91/PLAW-115publ91.pdf.

[32] *Id.*; *see also* U.S. Department of Defense, *Alternatives to Aqueous Film Forming Foam Report to Congress*, June 2018, *available at* https://www.denix.osd.mil/derp/home/documents/alternatives-to-aqueous-film-forming-foam-report-to-congress/.

[33] ATSDR, *Toxicological Profile for Perfluoroalkyls: Draft for Public Comment* (June 2018), *available at* https://www.atsdr.cdc.gov/toxprofiles/tp200.pdf.

245.    On February 20, 2020, the EPA announced a proposed decision to regulate PFOA and PFOS under the Safe Drinking Water Act, which the agency characterized as a "key milestone" in its efforts to "help communities address per- and polyfluoroalkyl substances (PFAS) nationwide."[34] Following a public comment period on its proposed decision, the EPA will decide whether to move forward with the process of establishing a national primary drinking water regulation for PFOA and PFOS.

### E.    AFFF Containing PFOS and PFOA Is Fungible and Commingled in the Groundwater

246.    AFFF containing PFOS and/or PFOA, once it has been released to the environment, lacks characteristics that would enable identification of the company that manufactured that particular batch of AFFF or chemical feedstock.

247.    A subsurface plume, even if it comes from a single location, such as a retention pond or fire training area, originates from mixed batches of AFFF and chemical feedstock coming from different manufacturers.

248.    Because precise identification of the specific manufacturer of any given AFFF/Component Product that was a source of the PFAS found at Reese Air Force Base, during fire protection, training, and response activities, resulting in widespread PFAS contamination is nearly impossible, given certain exceptions, Plaintiffs must pursue all Defendants, jointly and severally.

249.    Defendants are also jointly and severally liable because they conspired to conceal the true toxic nature of PFOS and PFOA, to profit from the use of AFFF/Component Products containing PFOS and PFOA, at Plaintiffs' expense, and to attempt to avoid liability.

---

[34] Press Release, *EPA Announces Proposed Decision to Regulate PFOA and PFOS in Drinking Water*, Feb. 20, 2020, *available at* https://www.epa.gov/newsreleases/epa-announces-proposed-decision-regulate-pfoa-and-pfos-drinking-water.

61

## MARKET SHARE LIABILITY, ALTERNATIVE LIABILITY, CONCERT OF ACTION, AND ENTERPRISE LIABILITY

250.    Defendants in this action are manufacturers that control a substantial share of the market for AFFF/Component Products containing PFOS, PFOA, and/or their chemical precursors in the United States and are jointly responsible for the contamination of the groundwater at the Site, affecting groundwater sources within the vicinity of the base. Market share liability attaches to all Defendants and the liability of each should be assigned according to its percentage of the market for AFFF/Component Products at issue in this Complaint.

251.    Because PFAS is fungible, it is impossible to identify the exact Defendant who manufactured any given AFFF/Component Product containing PFOS, PFOA, and/or their chemical precursors found free in the air, soil or groundwater, and each of these Defendants participated in a territory-wide and U.S. national market for AFFF/Component Products during the relevant time.

252.    Concert of action liability attaches to all Defendants, each of which participated in a common plan to commit the torts alleged herein and each of which acted tortuously in pursuance of the common plan to knowingly manufacture and sell inherently dangerous AFFF/Component Products containing PFOS, PFOA, and/or their chemical precursors.

253.    Enterprise liability attaches to all the named Defendants for casting defective products into the stream of commerce.

## CONSPIRACY

254.    Defendants actually knew of the health and environmental hazards which PFOA and PFOS posed to Plaintiffs.

255.    Beginning in the 1970s and continuing through the date of this Complaint, Defendants formed joint task forces, committees and otherwise colluded for the avowed purpose

62

of providing information about AFFF/Component Products containing PFOA and/or PFOS to the public and to government agencies with the unlawful purpose of:

a. Creating a market for AFFF/Component Products containing PFOA and/or PFOS despite knowledge of the hazards which PFOA and PFOS posed to the groundwater in Colorado and the residents who depend on such water;

b. Concealing the environmental properties and toxic nature of PFOA and PFOS, and its impact on Plaintiffs and the environment; and

c. Maximizing profits in a way Defendants knew or should have known would result in the contamination of Plaintiffs' drinking water.

256. Defendants carried out their conspiracy by one or more of the following overt acts or omissions:

a. Intentionally representing to the DOD, USAF, USEPA and the public that AFFF/Component Products containing PFOA and PFOS were safe and did not pose an environmental or human health risk;

b. Concealing the dangers of PFOA and PFOS (including toxicological information on the dangers of the chemicals to living organisms, adverse fate and transport characteristics, and the propensity of PFOA and PFOS to contaminate groundwater) from the government and the public by, among other means, repeatedly requesting that information about the dangers and health effects of PFOA and PFOS be suppressed and not otherwise published, and by downplaying any adverse findings relating to PFOA and PFOS;

63

INDEX NO. 157378/2022

RECEIVED NYSCEF: 08/30/2022

c.      Concealing the dangers of AFFF/Component Products containing PFOA and PFOS from end users, sensitive receptors, public water suppliers, and the users and consumers of groundwater;

d.      Using their considerable resources to fight PFOA and PFOS regulation; and

e.      Collectively deciding to use PFOA and/or PFOS rather than other, safer surfactants because AFFF/Component Products containing PFOA and/or PFOS were the most profitable surfactant for Defendants to use.

257.     As a direct and proximate result of the Defendants' above-described conspiracy, PFOA and PFOS, at all times relevant to this litigation has:

a.      Posed and continues to pose a health threat to Plaintiffs because it has bioaccumulated in their bodies;

b.      Contaminated Plaintiffs' property, soil, and groundwater, for those with private water wells;

c.      Created the need for remediation of PFOA- and PFOS- contaminated groundwater for those property owners who utilize private water wells, or, where remediation of the groundwater is impractical, installation of a system to filter out PFOA and PFOS or procurement of water from alternative sources;

## CAUSES OF ACTION

## COUNT 1:
## DEFECTIVE DESIGN

258.     Plaintiffs adopt, reallege, and incorporate the allegations in the preceding paragraphs and further alleges the following:

259.     As manufacturers of AFFF/Component Products containing PFOS, PFOA, and/or their chemical precursors, Defendants owed a duty to all persons whom its products might

64

foreseeably harm, including Plaintiffs, and not to market any product which is unreasonably dangerous in design for its reasonably anticipated used.

260.    Defendants' AFFF/Component Products were unreasonably dangerous for its reasonably anticipated uses for the following reasons:

      a.  PFAS causes extensive groundwater contamination, even when used in its foreseeable and intended manner;

      b.  Even at extremely low levels, PFAS render drinking water unfit for consumption;

      c.  PFAS poses significant threats to public health; and

      d.  PFAS create real and potential environmental damage.

261.    Defendants knew of these risks and failed to use reasonable care in the design of their AFFF/Component Products.

262.    AFFF containing PFOS, PFOA, and/or their chemical precursors poses a greater danger to the environment and to human health than would be expected by ordinary persons such as Plaintiffs.

263.    At all times, Defendants were capable of making AFFF/Component Products that did not contain PFOS, PFOA, and/or their chemical precursors. Thus, reasonable alternative designs existed which were capable of preventing Plaintiffs' injuries.

264.    The risks posed by AFFF containing PFOS, PFOA, and/or their chemical precursors far outweigh the products' utility as a flame-control product.

265.    The likelihood that Defendants' AFFF/Component Products would be spilled, discharged, disposed of, or released into the environment and Plaintiffs' water well has been, and continues to be, contaminated with PFAS in varying amounts over time, causing Plaintiffs significant injuries and damages that far outweighed any burden on Defendants to adopt an

alternative design, and outweighed the adverse effect, if any, of such alternative design on the utility of the product.

266.    As a direct and proximate result of Defendants' unreasonably dangerous design, manufacture, and sale of AFFF/Component Products containing PFOS, PFOA, and/or their chemical precursors, Plaintiffs' water supply has been, and continues to be, contaminated with PFAS in varying amounts over time, causing Plaintiffs significant injuries and damages.

267.    Defendants knew that it was substantially certain that their acts and omissions described above would contaminate Plaintiffs' water supply with PFAS in varying amounts over time, causing Plaintiffs significant injuries and damages. Contamination that led to the exposure of Plaintiffs' to toxins and increased their risk of numerous diseases. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for Plaintiffs' health and safety, and/or property rights.

## COUNT 2:
## FAILURE TO WARN

268.    Plaintiffs adopt, reallege, and incorporate the allegations in the preceding paragraphs and further alleges the following:

269.    As manufacturers of AFFF/Component Products containing PFOS, PFOA, and/or their chemical precursors, Defendants had a duty to provide adequate warnings of the risks of these products to all persons whom its product might foreseeably harm, including Plaintiffs.

270.    Defendants' AFFF/Component Products were unreasonably dangerous for its reasonably anticipated uses for the following reasons:

   a.    PFAS causes extensive groundwater contamination, even when used in its foreseeable and intended manner;

   b.    Even at extremely low levels, PFAS render drinking water unfit for consumption;

66

    c.   PFAS poses significant threats to public health; and

    d.   PFAS create real and potential environmental damage.

271.    Defendants knew of the health and environmental risks associated with their AFFF/Component Products and failed to provide a warning that would lead an ordinary reasonable user or handler of a product to contemplate the dangers associated with their products or an instruction that would have avoided Plaintiffs' injuries.

272.    Despite Defendants' knowledge of the environmental and human health hazards associated with the use and/or disposal of their AFFF/Component Products in the vicinity of drinking water supplies, including PFAS contamination of the drinking supplies, Defendants failed to issue any warnings, instructions, recalls, or advice regarding their AFFF/Component Products to Plaintiff, governmental agencies or the public.

273.    As a direct and proximate result of Defendants' failure to warn, Plaintiffs' water supply has been, and continues to be, contaminated with PFAS in varying amounts over time, causing Plaintiffs significant injuries and damages. Further, this contamination led to the exposure of Plaintiffs to toxins and increased their probabilities of numerous diseases as more fully set forth above.

274.    Defendants knew that it was substantially certain that their acts and omissions described above would contaminate Plaintiffs water supply with PFAS in varying amount, causing Plaintiffs significant injuries and damages. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for Plaintiffs' health and safety, and/or property rights.

67

## COUNT 3:
## NEGLIGENCE

275.    Plaintiffs adopt, reallege, and incorporate the allegations in the preceding paragraphs and further alleges the following:

276.    As manufacturers of AFFF/Component Products containing PFOS, PFOA, and/or their chemical precursors, Defendants owed a duty to Plaintiffs and to all persons whom its products might foreseeably harm and to exercise due care in the formulation, manufacture, sale, labeling, warning, and use of PFAS-containing AFFF.

277.    Defendants owed a duty to Plaintiffs to act reasonably and not place inherently dangerous AFFF/Component Products into the marketplace when its release into the air, soil, and water was imminent and certain.

278.    Defendants knew or should have known that PFAS were leaching from AFFF used for fire protection, training, and response activities.

279.    Defendants knew or should have known that PFAS are highly soluble in water, highly mobile, extremely persistent in the environment, and high likely to contaminate water supplies if released into the environment.

280.    Defendants knew or should have known that the manner in which they were designing, manufacturing, marketing, distributing, and selling their AFFF/Component Products would result in contamination of Plaintiffs' water supply with PFAS in varying amounts over time, causing Plaintiffs significant injuries and damages.

281.    Despite the fact that Defendants knew or should have known that PFAS are toxic, can contaminate water resources and are carcinogenic, Defendants negligently:

68

a.  designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold AFFF/Component Products containing PFOS, PFOA, and/or their chemical precursors;

b.  issued deficient instructions on how their AFFF/Component Products should be used and disposed of, thereby permitting PFAS to contaminate the groundwater in and around the Site;

c.  failed to recall and/or warn the users of their AFFF/Component Products of the dangers of groundwater contamination as a result of standard use and disposal of their products;

d.  failed and refused to issue the appropriate warning and/or recalls to the users of their AFFF/Component Products; and

e.  failing to take reasonable, adequate, and sufficient steps or actions to eliminate, correct, or remedy any contamination after it occurred.

282.    The magnitude of the burden on the Defendants to guard against this foreseeable harm to Plaintiffs was minimal, as the practical consequences of placing this burden on the Defendants amounted to a burden to provide adequate instructions, proper labeling, and sufficient warnings about their AFFF/Component Products.

283.    As manufacturers, Defendants were in the best position to provide adequate instructions, proper labeling, and sufficient warnings about their AFFF/Component Products, and to take steps to eliminate, correct, or remedy any contamination they caused.

284.    As a direct and proximate result of Defendants' negligence, Plaintiffs' water supply has been contaminated with PFAS, in varying amounts of time, causing Plaintiffs significant injuries and damages.

69

285.     Defendants knew that it was substantially certain that their acts and omissions described above would cause Plaintiffs' water supply to be contaminated with PFAS in varying amounts over time, causing Plaintiffs significant injuries and damages. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for Plaintiffs' health and safety, and/or property rights.

### COUNT 4:
### TRESPASS

286.     Plaintiffs adopt, reallege, and incorporate the allegations in the preceding paragraphs and further alleges the following:

287.     Plaintiffs are the owners, operators, and actual possessors of real property as defined herein.

288.     Defendants designed, manufactured, distributed, marketed, and sold AFFF/Component Products with the actual knowledge and/or substantial certainty that AFFF containing PFOS, PFOA, and/or their chemical precursors would, through normal use, release PFAS that would migrate into groundwater, causing contamination.

289.     Defendants negligently, recklessly, and/or intentionally designed, manufactured, distributed, marketed, and sold AFFF/Component Products in a manner that caused PFAS to contaminate Plaintiffs' property.

290.     As a direct and proximate result of Defendants' trespass, Plaintiffs have suffered and continues to suffer property damage requiring investigation, remediation, and monitoring costs.

291.     Defendants knew that it was substantially certain that their acts and omissions described above would threaten public health and cause extensive contamination of property,

70

including groundwater collected for drinking. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for Plaintiffs' property rights.

### <u>COUNT 5:</u>
### ACTUAL FRAUDULENT TRANSFER (DuPont and Chemours Co.)

292.    Plaintiffs adopt, reallege, and incorporate the allegations in the preceding paragraphs and further alleges the following:

293.    Through their effectuation of the Spinoff, Chemours Co. and DuPont (the "Fraudulent Transfer Defendants") caused Chemours Co. to transfer valuable assets to DuPont, including but not limited to the $3.9 billion dividend (the "Transfers"), while simultaneously assuming significant liabilities (the "Assumed Liabilities").

294.    The Transfers and Assumed Liabilities were made for the benefit of DuPont.

295.    At the time that the Transfers were made and the Liabilities were assumed, and until the Spinoff was complete, DuPont was in a position to, and in fact did, control and dominate Chemours Co.

296.    The Fraudulent Transfer Defendants made the Transfers and incurred the Assumed Liabilities with the actual intent to hinder, delay, and defraud the creditors or future creditors of Chemours Co.

297.    Plaintiffs have been harmed as a result of the conduct of the Fraudulent Transfer Defendants.

298.    Plaintiffs are entitled to avoid the Transfers and to recover property or value transferred to DuPont.

71

## COUNT 6:
### CONSTRUCTIVE FRAUDULENT TRANSFER (DuPont and Chemours Co.)

299.    Plaintiffs adopt, reallege, and incorporate the allegations in the preceding paragraphs and further alleges the following:

300.    Chemours Co. did not receive reasonably equivalent value from DuPont in exchange for the Transfers and Assumed Liabilities.

301.    Each of the Transfers and the assumption of the Assumed Liabilities by Chemours Co. was made to or for the benefit of DuPont.

302.    At the time that the Transfers were made, and the Assumed Liabilities were assumed, and until the Spinoff was complete, DuPont was in a position to, and in fact did, control and dominate Chemours Co.

303.    The Fraudulent Transfer Defendants made the Transfers and assumed the Assumed Liabilities when Chemours Co. was engaged or about to be engaged in a business for which its remaining assets were unreasonably small in relation to its business.

304.    Chemours Co. was insolvent or in contemplation of insolvency at the time of the Transfers or became insolvent as a result of the Transfers and its assumption of the Assumed Liabilities.

305.    At the time that the Transfers were made and Chemours Co. assumed the Assumed Liabilities, the Fraudulent Transfer Defendants intended to incur, or believed or reasonably should have believed, that Chemours Co. would incur debts beyond its ability to pay as they became due.

306.    Plaintiffs have been harmed as a result of the Transfers.

307.    Plaintiffs are entitled to avoid the Transfers and to recover property or value transferred to DuPont.

## COUNT 6:
## PUNITIVE DAMAGES

308.    Plaintiffs adopt, reallege, and incorporate the allegations in the preceding paragraphs and further alleges the following:

309.    Defendants engaged in willful, wanton, malicious, and/or reckless conduct that caused the foregoing damage upon Plaintiff, disregarding their protected rights.

310.    Defendants' willful, wanton, malicious, and/or reckless conduct includes but is not limited to Defendants' failure to take all reasonable measures to ensure PFAS would not be released into the environment and inevitably to Plaintiffs' water supply which was contaminated and continues to be contaminated with PFAS in varying amounts over time, causing Plaintiffs significant injury and damage.

311.    Defendants have caused great harm to Plaintiff, acting with implied malice and an outrageously conscious disregard for Plaintiffs' rights and safety, such that the imposition of punitive damages is warranted.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants, and each of them, jointly and severally, and request the following relief from the Court:

a.  a declaration that Defendants acted with negligence, gross negligence, and/or willful, wanton, and careless disregard for the health, safety of Plaintiffs;

b.  an award to Plaintiffs of general, compensatory, exemplary, consequential, nominal, and punitive damages;

c.  an order for an award of attorney fees and costs, as provided by law;

d.  pre-judgment and post-judgment interest as provided by law;

e.  compensatory damages according to proof including, but not limited to:

73

      i.  costs and expenses related to the past, present, and future investigation, sampling, testing, and assessment of the extent of PFAS contamination at Plaintiffs' water source;

      ii.  costs and expenses related to past, present, and future treatment and remediation of PFAS contamination at Plaintiffs' water source; and

      iii.  costs and expenses related to past, present, and future installation and maintenance of filtration systems to assess and evaluate PFAS at Plaintiffs' water source;

f.  an order barring the transfer of DuPont's liabilities for the claims brought in this Complaint;

g.  an award of punitive damages in an amount sufficient to deter Defendants' similar wrongful conduct in the future;

h.  an award of consequential damages;

i.  an order for an award of attorney fees and costs, as provided by law;

j.  an award of pre-judgment and post-judgment interest as provided by law; and

k.  an order for all such other relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all issues so triable as a matter of right.

DATED this 30th day of August 2022.

                                  Respectfully submitted,

                                  **NAPOLI SHKOLNIK**

                                  By: _/s/ Patrick J. Lanciotti_
                                  Patrick J. Lanciotti
                                  Andrew W. Croner
                                  360 Lexington Avenue, 11th Fl.
                                  New York, New York 10017
                                  (212) 397-1000
                                  planciotti@napolilaw.com
                                  acroner@napolilaw.com

74

Paul J. Napoli
270 Munoz Rivera Avenue, Suite 201, Hato Rey,
Puerto Rico 00918
(833) 271-4502
pnapoli@nsprlaw.com

75